[L. A. No. 17917.   In Bank.   Dec. 5, 1941.]

ROSS OWEN, Respondent, v. ISRAEL COHEN, Appellant.

148

Michael F. Shannon, Thomas A. Wood and Charles W. Wolfe for Appellant.

LeRoy B. Lorenz for Respondent.

CURTIS, J.—This is an action in equity brought for the dissolution of a partnership and for the sale of the partnership assets in connection with the settlement of its affairs.

On or about January 2, 1940, plaintiff and defendant entered into an oral agreement whereby they contracted to become partners in the operation of a bowling-alley business in Burbank, California. The parties did not expressly fix any definite period of time for the duration of this undertaking. For the purpose of securing necessary equipment, plaintiff advanced the sum of $6,986.63 to the partnership, with the understanding that the amount so contributed was to be considered a loan to the partnership and was to be repaid to the plaintiff out of the prospective profits of the business as soon as it could reasonably do so. Defendant owned an undivided one-half interest in a bowling-alley

establishment in Burbank and the partnership purchased the other one-half interest for the sum of $2,500, of which amount $1,250 was paid in cash and the balance of $1,250 was evidenced by the partners' promissory note. As part of this transaction plaintiff assumed payment of the sum of $4,650 owing on a trust deed on the property, title to which he took in his own name. The partnership also purchased alleys and other requisite furnishings, and as part payment therefor the two partners executed promissory notes in the total sum of $4,596, secured by a chattel mortgage on said equipment.

Plaintiff and defendant opened their partnership bowling-alley on March 15, 1940. From the day of its beginning until the institution of the present action on June 28, 1940—a period of approximately three and one-half months—the business was operated at a profit. During this time the partners paid off a part of the capital indebtedness and each took a salary of $50 per week. However, shortly after the business was begun differences arose between the partners with regard to the management of the partnership affairs and their respective rights and duties under their agreement. This continuing lack of harmonious relationship between the partners had its effect on the monthly gross receipts, which, though still substantial, were steadily declining, and at the date of the filing of this action much of the partnership indebtedness, including the aforementioned loan made by plaintiff, remained unpaid. On July 5, 1940, in response to plaintiff's complaint and upon order to show cause, the court appointed a receiver to take charge of the partnership business, which ever since has been under his control and management.

As the result of the trial of this action the court found that the partners "did not agree upon any definite term for the continuance of said partnership, nor upon any particular undertaking to be accomplished; that the said partnership was a partnership at will." From this finding the court concluded that plaintiff was entitled to a dissolution under section 2425, subdivision (1) (b), of the Civil Code. The court further found that the parties disagreed "on practically all matters essential to the operation of the partnership business and upon matters of policy in connection therewith"; that the defendant had "committed breaches of the partnership agreement" and had "so conducted himself in affairs relating

to the business'' that it was ''not reasonably practicable to carry on the partnership business with him.'' From this finding it was concluded that the partnership was dissoluble by court decree in accordance with the provisions of section 2426 of the Civil Code.

Pursuant to these findings of fact and conclusions of law, the trial court rendered a decree adjudging the partnership dissolved and ordering the assets sold by the receiver. It was further decreed that the proceeds of such sale and of the receiver's operation of the business on hand upon the consummation of such sale be applied, after allowance for the receiver's fees and expenses, to payment of the partnership debts, including the amount of $6,986.63 loaned by plaintiff to the business; that one-half of the remainder of the proceeds be paid to plaintiff, together with the additional sum of $100.17 for his costs; and that defendant be given what was left. It was also provided that in bidding at the sale of the partnership assets, either party might use, in lieu of cash, credit to the extent of any sums which would accrue to him out of the proceeds; and that if the money derived from such sale proved to be insufficient to pay plaintiff's costs, a personal judgment to the extent of the deficiency was to be rendered against defendant. It is from this decree that the defendant has appealed.

The principal question presented for consideration is whether or not the evidence warrants a decree of dissolution of the partnership. Defendant's objection to the finding that the partnership was one at will is fully justified by the uncontradicted evidence that the partners at the inception of their undertaking agreed that all obligations incurred by the partnership, including the money advanced by plaintiff, were to be paid out of the profits of the business. While the term of the partnership was not expressly fixed, it must be presumed from this agreement that the parties intended the relation should continue until the obligations were liquidated in the manner mutually contemplated. These circumstances negative the existence of a partnership at will, dissoluble at the election of a member thereof (*Mervyn Investment Company* v. *Biber*, 184 Cal. 637 [194 Pac. 1037]), and demonstrate conclusively that the assailed finding is without support in the record. However, our determination of this issue does not necessitate a reversal of the decree, for other facts found by the court relating to defendant's breach of

the partnership agreement amply justify the decision rendered. In such event the law is settled beyond question that the finding which does not conform to the evidence becomes immaterial and may be disregarded.

It is not necessary to enter into a detailed statement of the quarrel between the partners. Whether the disharmony was the result of a difference in disposition or to other causes, the effect is the same. Most of the acts of which complaint is made are individually trivial, but from the aggregate the court found, and the record so indicates, that the breach between the partners was due in large measure to defendant's persistent endeavors to become the dominating figure of the enterprise and to humiliate plaintiff before the employees and customers of the bowling-alley. In this connection plaintiff testified that defendant declined to do any substantial amount of the work required for the successful operation of the business; that defendant informed him that he [defendant] "had not worked yet in 47 years and did not intend to start now"; and that he [plaintiff] "should do whatever manual work he could do on the premises, but that he [defendant] would act as manager and wear the dignity." The record also discloses that during the preparation and before the opening of the bowling-alley establishment, defendant told a mutual acquaintance that plaintiff would not be there very long. Corroborative of this evidence is plaintiff's testimony that a few weeks prior to the filing of this action, when he had concluded that he and defendant could not reconcile their differences, he asked defendant to make an offer either to buy out his [plaintiff's] interest in the business or to sell to him [plaintiff]; that defendant replied, in effect, that when he was ready to sell to plaintiff, he would set the price himself and it would cost plaintiff plenty to get rid of him. In addition, there is considerable evidence demonstrating that the partners disagreed on matters of policy relating to the operation of the business. One cause of dispute in this connection was defendant's desire to open a gambling room on the second floor of the bowling-alley property and plaintiff's opposition to such move. Another was defendant's dissatisfaction with the agreed salary of $50 per week fixed for each partner to take from the business and his desire to withdraw additional amounts therefrom. This constant dissension over money affairs culminated in defend-

ant's appropriation of small sums from the partnership's funds to his own use without plaintiff's knowledge, approval or consent. In justification of his conduct defendant claimed that on each occasion he set aside a like amount for plaintiff. This extenuating circumstance, however, does not serve to eliminate from the record the fact that monetary matters were a continual source of argument between the partners.

Defendant urges that the evidence shows only petty discord between the partners, and he advances, as applicable here, the general rule that trifling and minor differences and grievances which involve no permanent mischief will not authorize a court to decree a dissolution of a partnership (20 R. C. L. 958, Par. 182). However, as indicated by the same section in R. C. L. and previous sections, courts of equity may order the dissolution of a partnership where there are quarrels and disagreements of such a nature and to such extent that all confidence and cooperation between the parties has been destroyed or where one of the parties by his misbehavior materially hinders a proper conduct of the partnership business. It is not only large affairs which produce trouble. The continuance of overbearing and vexatious petty treatment of one partner by another frequently is more serious in its disruptive character than would be larger differences which would be discussed and settled. For the purpose of demonstrating his own preeminence in the business one partner cannot constantly minimize and deprecate the importance of the other without undermining the basic status upon which a successful partnership rests. In our opinion the court in the instant case was warranted in finding from the evidence that there was very bitter, antagonistic feeling between the parties; that under the arrangement made by the parties for the handling of the partnership business, the duties of these parties required cooperation, coordination and harmony; and that under the existent conditions the parties were incapable of carrying on the business to their mutual advantage. As the court concluded, plaintiff has made out a cause for judicial dissolution of the partnership under section 2426 of the Civil Code:

"(1) On application by or for a partner the court shall decree a dissolution whenever:

"(c) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business,

"(d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him,

"(f) Other circumstances render a dissolution equitable."

■ Defendant next questions the propriety of that portion of the decree which provides for the payment of plaintiff's loan to the business, to-wit, the sum of $6,986.63, from the proceeds realized upon the sale of the partnership assets. It is his contention that since the partners agreed that the amount so contributed was to be repaid from the profits of the business, which the evidence established to be a profitable enterprise, the court's order directing the discharge of this partnership obligation in a manner violative of the express understanding of the parties is unjustifiable (*Mervyn Investment Company* v. *Biber, supra*). That a party to a contract may absolutely limit his right to receive a sum of money from a specified source is indisputable (*Lynch* v. *Keystone Consolidated Mining Company,* 163 Cal. 690 [126 Pac. 968]; *Martin* v. *Martin,* 5 Cal. App. (2d) 591 [43 Pac. (2d) 314]). But defendant's argument based upon this settled precept is of no avail here, for his above-described conduct, creative of a condition of disharmony in derogation of the best interests of the partnership, constituted ground for the court's decree of dissolution and its order directing the sale of the assets for the purpose of forwarding the settlement of the partnership affairs. Defendant, whose persistence in the commission of acts provocative of dissension and disagreement between the partners made it impossible for them to carry on the partnership business, is in no position now to insist on its continued operation. These circumstances not only render the assailed provision of the decree invulnerable to defendant's objection, but also establish its complete accord with established principles of equity jurisprudence.

■ Defendant also attacks the provision in the decree permitting the plaintiff, in bidding at the receiver's sale of the partnership assets, to use, "in lieu of cash, credit to the extent of any sums which will accrue to him out of the proceeds." He contends that such stipulation is erroneous on its face because it recognizes that the amount of money which "will accrue" to plaintiff cannot be ascertained until after

the sale and yet it authorizes plaintiff to use in connection with his bid credit measured by such an indefinite quantity. This factor of uncertainty, he claims, will operate to plaintiff's advantage by stifling competitive bidding and therefore will react unfavorably on the outcome of the sale. Defendant's argument is not only unsound in view of the precise wording employed by the court in reference to the conduct of the sale, but it likewise fails to present in its entirety that portion of the decree of which the clause in question is but a part. Exactly the same provision concerning the use of credit was made for the benefit of defendant, so that in this respect the parties were placed on an equal footing. Moreover, the extension of credit has no bearing upon the bidding as such, for plaintiff and defendant, as other bidders at the sale, still must state their offers for the purchase of the partnership assets in terms definite as to amount; therefore, the competitive spirit customarily present on such occasions will in nowise be disturbed. It is manifest from the court's language that the single circumstance which will give operative force to the applicable credit provision is the prevalence of plaintiff or defendant over other participants in the bidding. In such event the receiver, as part of the mechanics of computing the division of the proceeds, must, if so requested, take into account the sums of money which "will accrue" to the party bidding in the property and credit such amount against the cash figure constituting the prevailing bid. To pay money to the receiver merely to have it returned would be an idle ceremony, as the court recognized in its decree. In the case of an ordinary sale under execution the practice of the sheriff's taking the creditor's receipt instead of cash was approved in *Mitchell v. Alpha Hardware & Supply Co.*, 7 Cal. App. (2d) 52 [45 Pac. (2d) 442], wherein it was said at page 61: "Thus . . . if the sheriff accepts the receipt, and the judgment is satisfied, in substance and effect it amounts to the same thing as though actual cash had been passed to and fro, from purchaser to sheriff and sheriff to purchaser."

The fact that at an execution sale the amount owing to the judgment creditor is known *before* the sale while in the present situation the credit to which plaintiff or defendant will be entitled cannot be ascertained until *after* the receiver's sale is immaterial, for in neither case does certainty as to

such allowance affect the conduct of the bidding. In each instance the credit is definitely fixed at the time of its consideration, which is *after* the consummation of the sale. Nor is it of consequence that it is obligatory upon the receiver here, in the event that either plaintiff or defendant prevails in the bidding at the sale of the partnership assets, to approve such party's tender of credit owing him, in lieu of cash, whereas the acceptance of a like offer from a successful judgment creditor at an execution sale is wholly volitional on the part of the sheriff. The procedure prescribed by the court here, after a consideration of all the facts presented in this equity proceeding, was a matter purely within its discretion, and no abuse thereof appears from the record. In accord with this analysis, it is our opinion that the questioned portion of the decree is proper in every respect.

Defendant finally contends that the court erred in its allowance of costs to plaintiff. Provision was made in the decree for plaintiff's recovery of his costs out of the proceeds of the sale of the partnership assets and also for a personal judgment against defendant for the payment of this item to the extent that it is not satisfied upon distribution of the proceeds according to the priority specified by the court. Defendant's objection is untenable, for under section 1032, subdivision (c) of the Code of Civil Procedure the assessment of costs in a proceeding in equity is a matter whose disposition rests "in the discretion" of the trial court, and the action of such tribunal will not be disturbed where, as here, there is no showing of an abuse of discretion.

The disposition of this appeal on the merits makes it unnecessary to pass upon the incidental *supersedeas* proceeding instituted herein, and the order to show cause issued in connection therewith is therefore discharged.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.