[Civ. No. 13964.  First Dist., Div. One.  Aug. 24, 1949.]

WILLIAM P. MEHERIN, Appellant, v. MARK M.
MEHERIN, JR. et al., Respondents.

Courtney L. Moore and Charles R. Collins for Appellant.

Frank J. Mahoney for Respondents.

WARD, J.—Plaintiff in an action for dissolution of a partnership and for an accounting appeals from the judgment in favor of defendants Mark M. Meherin, Jr., and J. Vincent Meherin, copartners, transacting an insurance brokerage business under the name of Mark M. Meherin & Son, and Mark M. Meherin & Son, a copartnership. All of the questions raised on appeal relate to the correctness of the findings of fact.

Mark M. Meherin, the father of the individual defendants and plaintiff's grandfather, and his son, Patrick W. Meherin, plaintiff's father, began the insurance brokerage business of Mark M. Meherin & Son in June, 1906. J. Vincent Meherin joined them in 1910, and on January 1, 1915, the three became copartners under the name Mark M. Meherin & Son. Mark M. Meherin, Jr., joined said firm January 1, 1926. Plaintiff began working for the firm in 1934 when it was composed of his father and his two uncles. On January 1, 1936, he became a partner thereof. On April 19, 1939, Patrick W. Meherin died. The court found and plaintiff does not dispute "That William P. Meherin, plaintiff above named, and defendants Mark M. Meherin, Jr., and J. Vincent Meherin entered into an oral copartnership agreement for the purpose of acquiring and continuing an insurance brokerage business under the firm name and style of Mark M. Meherin & Son, on or about the 1st day of May, 1939." Under said agreement plaintiff owned a 10 per cent interest in the copartnership. His uncles each owned, respectively, a 45 per cent interest. Subsequently, on or about May 1, 1940, there was a readjustment of the interests in the firm, by which plaintiff owned 15 per cent and each of the other two partners had 42½ per cent. This percentage prevailed until the dissolution out of which this action arose.

The events giving rise to the present litigation occurred

towards the end of 1943. Plaintiff's interpretation of said events, as seen from the allegations of the complaint, is that on December 13, 1943, he was notified by his uncles that the copartnership was dissolved as of that date and he was thereafter expelled from participation in the assets, business and properties of the copartnership and denied the right to share in any profits of said business. Defendants, on the other hand, contend, as alleged in their answer, that "plaintiff, without justification, cause or reason therefor, became dissatisfied with his association in said copartnership, and on the 19th day of November, 1943, voluntarily ceased to be associated . . . and withdrew from and abandoned said business and all its obligations and liabilities, and declared that he was quitting said business and would no longer be associated with it."

Plaintiff testified that the last day he worked at the office of the partnership was Friday, November 19, 1943. On Sunday, the 21st, he cleared his desk, removing his personal belongings and leaving memorandums and notations with respect to his unfinished claims work. Defendants produced considerable proof of the fact that during the week end of November 20-21, 1943, plaintiff informed family friends and business associates that he was leaving because he was dissatisfied with his association in Mark M. Meherin & Son. The reasons for said dissatisfaction are expressed as follows in plaintiff's letter of November 21, 1943, to his uncle Vincent: "From my dad's death up to the present time, I have never clearly understood my position in the firm. I realize that I am a partner in name and financial participation and that is about all. I definitely feel that my presence there is sort of a forced acceptance. . . . To begin with, I have never reconciled myself to the treatment which was accorded my mother. A lousy life insurance policy plus half my father's salary for one year. . . . There was no payment made for 'good will' for all the years that my father put into the business—Small things—the selling to my mother of Dad's car for the full market price of that time, with not even a thought that the major share in that car belonged to my father . . . I can certainly blame the firm for all the mental anguish she experienced following dad's death. She has been shamefully treated . . . For some years I have discussed with you and with Mark that I wanted some one to do the claim's work. I detested that work. There seems to be a curse on all that work [on] that desk. There was never anything done. Jack, who compara-

tively speaking, is a stranger, asked Mark once—and presto! Miss Hall. for me, a partner, that's hard to swallow, in fact, I don't swallow it at all."

The suggestion advanced by defendant J. Vincent Meherin in a letter dated November 27, 1943, that plaintiff come to the office for a discussion was refused by plaintiff in his letter of December 3, 1943, wherein plaintiff stated that he was "still a member of the partnership and will so continue unless there be further action on either your or my part." On December 13, 1943, J. Vincent Meherin wrote plaintiff that his "suspicions and lack of trust and confidence have created a condition which is intolerable among partners and leaves no alternative other than immediate dissolution. Mark and I have therefore determined to dissolve the partnership and this will serve to notify you formally that partnership is dissolved as of this date, December 13, 1943. We intend to have Mr. John Strachan prepare a statement immediately. You will appreciate that if you so desire you may at your own expense, have an accountant of your own selection and the books will be available to him at all reasonable times. As soon as this statement is prepared a copy will be sent to you which will be the basis of the settlement of our partnership affairs." In said letter it was also suggested that an automobile in plaintiff's possession of the market value of $1,150 might be kept by him as a portion of his share of the partnership assets, and that with respect to plaintiff's life insurance policies totaling $50,000, the premiums for which had been paid by the partnership, they might either be surrendered for their cash surrender value or retained by plaintiff if he so desired.

Further correspondence between the parties, principally on the subject of said insurance policies, culminated in defendants' letter of June 12, 1944, which reads in part as follows: "We are enclosing herewith balance sheet as of December 13, 1943 as prepared by John R. Strachan, Certified Public Accountant. These sheets are self-explanatory and are given, as you see, in detail and show as of the date of dissolution of your interest in capital account as being $11,026.30. We are enclosing our check No. 167 made to your order in the amount of $10,738.16. The difference between the two figures is for first quarter 1943 federal and state taxes as shown on check stub. We are also enclosing life insurance policies #5,715,757, #5,450,520, #5,450,116, #5,450,519 and #5,172,584, which were previously paid for by the firm. We are handing you these policies to do with

as you so desire. . . . If there are any questions in the balance sheets that you do not understand do not hesitate to call on us and we' will do our best to explain anything that may not be clear in your mind." Plaintiff did not cash said check for $10,738.16. At the time of the hearing of the settlement of the findings it was stipulated that the partnership would "place in an interest bearing savings account in the Bank of America . . . the sum of $10,738.16, said deposit to be made in the name of Martin Mongan, County Clerk of the City and County of San Francisco, said sum to be paid by said County Clerk to the plaintiff herein as directed by the court . . ." and that the check would be marked void by the clerk of the court upon presentation of a savings passbook evidencing the said deposit. Plaintiff testified that he did not question the correctness of Mr. Strachan's statement, and it was stipulated by plaintiff's counsel that "the figures in there are correct, we are not arguing or attempting to impeach his statement of what the books show." Following receipt of the said letter of June 12, 1944, plaintiff did not communicate with his uncles until May 7, 1945, at which time he wrote that he had employed counsel "to ascertain what monies are due me as a result of the dissolution of the partnership . . ."

The basic contention advanced by plaintiff on his appeal is that the trial court erred in finding that the copartnership which commenced May 1, 1939, was a copartnership for a fixed term, instead of finding that it was a copartnership at will from which any partner might withdraw at any time without losing his legal right to receive the value of his interest, including good will, going concern value, plus profits up to the date of dissolution. (See Civ. Code, §§ 2425, 2432, 2435, 2436.) It is urged that, as there is no evidence of any fixed term for which the partnership was to engage in the insurance brokerage business, the court's finding lacks evidential support. There is, however, evidence that the firm had an insurance broker's license which did not expire until June 30, 1944; that their lease would not expire until June, 1944, and that during the lives of from one to five years of the various insurance policies which the firm had secured the members of the firm were jointly obligated to perform continuous services, such as obtaining proper coverage and rates and making adjustment of claims, as well as engineering work which includes fire prevention, fire protection and surveying work. These circumstances negative the existence of a part-

nership at will and serve to justify the assailed finding. (*Owen* v. *Cohen,* 19 Cal.2d 147, 150 [119 P.2d 713] ; *Zeibak* v. *Nasser,* 12 Cal.2d 1, 12 [82 P.2d 375].)

Plaintiff also contends that if there was a partnership for a fixed term it must have been created by an oral agreement made not later than May, 1940, for a term extending through 1943, and hence would be within the statute of frauds. However, as stated in *Rutland, Edwards & Co.* v. *Cooke,* 44 Cal.App.2d 258, 262 [112 P.2d 287], "the defense of the statute of frauds may not be raised for the first time on appeal." (Accord, *County of Humboldt* v. *Kay,* 57 Cal.App.2d 115 [134 P.2d 501].)

As an alternate ground for a reversal herein, plaintiff urges that even if the finding of a copartnership for a fixed term is upheld the judgment must be reversed, as the evidence establishes that the defendants dissolved the copartnership. This contention requires a determination of the sufficiency of the evidence to support the trial court's findings that on November 19, 1943, and prior to the expiration of the term of the copartnership, plaintiff became dissatisfied with his association therein and withdrew from and abandoned the business thereof, and that it is not true that his uncles expelled him from the copartnership. (*Rutherford* v. *Berick,* 82 Cal.App.2d 331, 332 [186 P.2d 23].)

Plaintiff argues that the evidence shows that his uncles did not regard his cessation of work on November 19, 1943, and the removal immediately thereafter of his belongings from the office, as a dissolution since their letter of December 13, 1943, states that the partnership was dissolved because of plaintiff's "suspicions and lack of trust and confidence." Evidence of defendants' intent is not determinative of the question whether the above mentioned findings are supported by the record. The testimony of those who spoke with plaintiff shortly after November 19, 1943, establishes that he was "quitting" and was "through with Meherins," because he and his uncle Mark could not get along; that he felt his uncles had given his mother "a dirty deal," and that he might be taken in the Army and he did not want them to handle his affairs. Hence the trial court's findings must stand.

"Dissolution of a joint venture takes place when either party to the joint venture ceases to be associated in carrying on the common business as distinguished from the winding up of the business. (Civ. Code, § 2423. See, also, *Zeibak* v. *Nasser,* 12 Cal.2d 1, 12 [82 P.2d 375] ; *Bayer* v. *Bayer,* 215

App.Div. 454 [214 N.Y.S. 332, 340].)'' (*Shearer* v. *Davis,* 67 Cal.App.2d 878, 879 [155 P.2d 708].) In this connection plaintiff further states that there is no evidence to support the finding that under the copartnership agreement each of the partners agreed to devote his entire business time to the copartnership. While it is true there is evidence that plaintiff's father spent only one or two hours a day in the office of the firm, the record also shows that after the father's death plaintiff and his uncles devoted their entire time to the work of the office, and it was plaintiff's understanding that he had to work there to earn the money which he received from the firm.

Plaintiff urges that the doctrine of frustration as an excuse for nonperformance is applicable. (See *Autry* v. *Republic Productions, Inc.,* 30 Cal.2d 144 [180 P.2d 888].) There is evidence that at the time that plaintiff left the firm he was classified I-A under the Selective Service Act and that he subsequently worked at Marinship at Sausalito, California, for the period from December 4, 1943, to April 1, 1944, at which latter date he joined the Merchant Marine in which he remained for about seven months. While such evidence might justify a finding that plaintiff's cessation of the work of the copartnership was motivated by a desire to leave work which was nonessential to the war effort, under the circumstances this court is not required to hold that as a matter of law a supervening fortuitous event rendered performance of the copartnership agreement impossible. (*Autry* v. *Republic Productions, Inc., supra.*) Furthermore, the evidence indicates that plaintiff of his own volition left the firm because of his dissatisfaction therewith.

Lastly, plaintiff contends that the record does not support the finding ''That on or about the 13th day of December, 1943, plaintiff and defendants Mark M. Meherin, Jr. and J. Vincent Meherin entered into an agreement for the settlement and liquidation of the partnership affairs, wherein and whereby it was agreed that John R. Strachan, a certified public accountant, would be employed to audit the business and affairs of said partnership for the purpose of determining the interest of each of the partners in and to the partnership assets as of December 13, 1943, which said agreement further provided that the findings of said John R. Strachan would be the basis of the settlement of said partnership affairs, and that upon such determination said plaintiff would be paid by

said defendants his interest in said partnership the amount shown to be due him by said John R. Strachan.''

While the record is devoid of any express agreement on plaintiff's part to the proposal for settlement outlined in his uncle's letter of December 13, 1943, there is evidence that he took no action contrary thereto. On the authority of the recent case of *Wood* v. *Gunther,* 89 Cal.App.2d 718 [201 P.2d 874], the court could properly find that on or about the time plaintiff received the letter of December 13, 1943, he agreed to accept the findings of Mr. Strachan as determinative of the amount due him. In that action for dissolution of a partnership, the trial court found that the surviving partners of the partnership were owners of all of the partnership assets and that the value of the interest due plaintiff, the widow of the deceased partner, was limited to $45,000. In affirming, the appellate court pointed out that pursuant to the provisions of the partnership agreement plaintiff might sell her interest to the remaining partners, the amount thereof to be determined in accordance with a stated formula, or the partners should make an offer to plaintiff within the terms of said agreement. They made an offer, either to pay $45,000 for her interest or to have her interest evaluated according to said formula, as she might elect. She remained silent for nearly three months and then advised one of the partners to come to her home, where he was served with a copy of the summons and complaint in that action. The court stated, at page 730 [*supra*] : ''This is not the case of a stranger offering to buy her interest . . . To such a person she would owe no duty to speak at all, but in this case she was one of three fiduciary partners in a firm of persons, who had a contract with one another, under which they owed duties, one to the other; and, consequently, silence made the acceptance. . . . If, by chance, arbitrators might have set a higher figure than $45,000 on her interest, the plaintiff cannot complain because she alone was the person at fault.''

The appeal from the order denying plaintiff's motion for a new trial, being a nonappealable order, is dismissed. The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 20, 1949.