'DRASHNER, Appellant v. SORENSON et al., Respondents
(63 N. W.2d 255)

(File No. 9356.   Opinion filed March 9, 1954)

**Thos. G. Wall,** Sturgis, for Plaintiff and Appellant.

**J. H. Bottum, Jr.,** Rapid City, for Defendants and Respondents.

SMITH, P. J.   In January 1951 the plaintiff, C. H. Drashner, and defendants, A. D. Sorenson and Jacob P. Deis, associated themselves as co-owners in the real estate, loan and insurance business at Rapid City.   For a consideration of $7500 they purchased the real estate and insurance agency known as J. Schumacher Co. located in an office room on the ground floor of the Alex Johnson Hotel building.   The entire purchase price was advanced for the partnership by the defendants, but at the time of trial $3,000 of that sum had been repaid to them by the partnership.   Although, as will appear from facts presently to be outlined, their operations were not unsuccessful, differences arose and on June 15, 1951 plaintiff commenced this action in which he sought an accounting, dissolution and winding up of the partnership. The answer and counterclaim of defendants prayed for like relief.

The cause came on for trial September 4, 1951.   The court among others made the following findings.   VII.   "That thereafter the plaintiff violated the terms of said partnership

agreement, in that he demanded a larger share of the income of the said partnershp than he was entitled to receive under the terms of said partnership agreement; that the plaintiff was arrested for reckless driving and served a term in jail for said offense; that the plaintiff demanded that the defendants permit him to draw money for his own personal use out of the moneys held in escrow by the partnership; that the plaintiff spent a large amount of time during business hours in the Brass Rail Bar in Rapid City, South Dakota, and other bars, and neglected his duties in connection with the business of the said partnership. * * * That the plaintiff, by his actions hereinbefore set forth, has made it impossible to carry on the partnership." The conclusions adopted read as follows: I "That the defendants are entitled to continue the partnership and have the value of the plaintiff's interest in the partnership business determined, upon the filing and approval of a good and sufficient bond, conditioned upon the release of the plaintiff from any liability arising out of the said partnership, and further conditioned upon the payment by the defendants to the plaintiff of the value of plaintiffs' interest in the partnership as determined by the Court." II "That in computing the value of the plaintiff's interest in the said partnership, the value of the good will of the business shall not be considered." III "That the value of the partnership shall be finally determined upon a hearing before this Court, * * *" and IV "That the plaintiff shall be entitled to receive one-third of the value of the partnership property owned by the partnership on the 12th day of September, 1951, not including the good will of the business, after the payment of the liabilities of the partnership and the payment to the defendants of the invested capital in the sum of $4,500.00." Judgment was accordingly entered dissolving the partnership as of September 12, 1951.

After hearing at a later date the court found: I "That the value of the said partnership property on the 12th day of September, 1951, was the sum of Four Thousand Four Hundred Ninety-eight and 90/100 Dollars ($4498.90), and on said date there was due and owing by the partnership for accountant's services the sum of Four Hundred Eighty Dollars ($480.00), and that on said date the sum of Four Thousand

Five Hundred Dollars ($4500.00) of the capital invested by the defendants had not been returned to the defendants." and II "That there is not sufficient partnership property to reimburse the defendants for their invested capital." Thereupon the court decreed "that the plaintiff had no interest in the property of the said partnership", and that the defendants were the sole owners thereof.

The assignments of error are predicated upon insufficiency of the evidence to support the findings and conclusions. Of these assignments, only those which question whether the court was warranted in finding that (a) the plaintiff caused the dissolution wrongfully, and (b) the value of the partnership property, exclusive of good will, was $4498.90 on the 12th day of September, 1951, merit discussion. A preliminary statement is necessary to place these issues in their framework.

■ The agreement of the parties contemplated an association which would continue at least until the $7500 advance of defendants had been repaid from the gross earnings of the business. Hence, it was not a partnership at will. Vangel v. Vangel, 116 Cal.App.2d 615, 254 P.2d 919; Zeibak v. Nasser, 12 Cal.2d 1, 82 P.2d 375. In apparent recognition of that fact, both plaintiff and defendants sought dissolution in contravention of the partnership agreement, see SDC 49.0603 (2) under SDC 49.0604(1) (d) on the ground that the adverse party had caused the dissolution wrongfully by willfully and persistently committing a breach of the partnership agreement, and by so conducting himself in matters relating to the partnership business as to render impracticable the carrying on of the business in partnership with him.

By SDC 49.0610(2) of the Uniform Partnership Act it is provided:

"When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

"(a) * * *

"(b) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by

themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the Court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution less any damages recoverable under clause (2) (a) (2) of this section and in like manner indemnify him against all present or future partnership liabilities.

"(c)   A partner who has caused the dissolution wrongfully shall have:

"(1)   * * *

"(2)   If the business is continued under paragraph (2) (b) of this section the right as against his copartners and all claiming through them in respect of their interests in the partnership, to have the value of his interest in the partnership, less any any damages caused to his copartners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the Court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered."

The foregoing are the remedial provisions by which the trial court was guided in its proceedings. Their validity was not drawn in question, and is not before us. Cf. Zeibak v. Nasser, 12 Cal.2d 1, 82 P.2d 375.

From this background we turn to a consideration of the evidence from which the trial court inferred that plaintiff caused the dissolution wrongfully.

The breach between the parties resulted from a continuing controversy over the right of plaintiff to withdraw sufficient money from the partnership to defray his living expenses. Plaintiff was dependent upon his earnings for the support of his family. The defendants had other resources. Plaintiff claimed that he was to be permitted to draw from the earnings of the partnership a sufficient amount to support himself and family. The defendants asserted that there

was a definite arrangement for the allocation of the income of the partnership and there was no agreement for withdrawal by plaintiff of more than his allotment under that plan. Defendants' version of the facts was corroborated by a written admission of plaintiff offered in evidence. From evidence thus sharply in conflict, the trial court made a finding, reading as follows: "That the oral partnership agreement between the parties provided that each of the three partners were to draw as compensation one-third of one-half of the commissions earned upon sales made by the partners; that the other one-half of the commissions earned on sales made by the partners and one-half of the commissions earned upon sales made by salesmen employed by the partnership, together with the earnings from the insurance business carried on by the partnership, was to be placed in a fund to be used for the payment of the operating expenses of the partnership, and after the payment of such operating expenses to be used to reimburse the defendants for the capital advanced in the purchase of the Julius Schumacher business and the capital advanced in the sum of Eight Hundred Dollars ($800.00) for the operating expenses of the business."

As an outgrowth of this crucial difference, there was evidence from which a court could reasonably believe that plaintiff neglected the business and spent too much time in a nearby bar during business hours. At a time when plaintiff had overdrawn his partners and was also indebted to one of defendants for personal advances, he requested $100 and his request was refused. In substance he then said, according to the testimony of the defendant Deis, that he would see that he "gets some money to run on", if they "didn't give it to him he was going to dissolve the partnership and see that he got it." Thereafter plaintiff pressed his claims through counsel, and eventually brought this action to dissolve the partnership. The claim so persistently asserted was contrary to the partnership agreement found by the court.

■ The foregoing picture of the widening breach between the parties is drawn almost entirely from the evidence of defendants. Of course, plaintiff's version of the agreement of the parties, and of the ensuing differences, if believed, would have supported findings of a different order

by the trier of the fact. It cannot be said, we think, that the trial court acted unreasonably in believing defendants, and we think it equally clear the court could reasonably conclude that the insistent and continuing demands of the plaintiff and his attendant conduct rendered it reasonably impracticable to carry on the business in partnership with him. It follows, we are of the opinion, the evidence supports the finding that plaintiff caused the dissolution wrongfully. Zeibak v. Nasser, 12 Cal.2d 1, 82 P.2d 375; Owen v. Cohen, 19 Cal.2d 147, 119 P.2d 713; Meherin v. Meherin, 93 Cal.App. 2d 459, 209 P.2d 36; and Vangel v. Vangel, 116 Cal.App.2d 615, 254 P.2d 919.

This brings us to a consideration of the sufficiency of the evidence to support the finding of the court that the property of the partnership was of the value of $4498.90 as of the date of dissolution.

■ Bitter complaint is made because the trial court refused to consider the good will of this business in arriving at its conclusion. The feeling of plaintiff is understandable. These partners must have placed a very high estimate upon the value of the good will of this agency because they paid Mr. Schumacher $7500 to turn over that office with its very moderate fixtures and its listing of property, together with an agreement that he would not engage in the business in Rapid City for at least two years. No doubt they attached some of this good will value to the location of the business which was under only a month to month letting. Cf. 38 C.J.S., Good Will, § 3, page 951; In re Brown's Will, 242 N. Y. 1, 150 N.E. 581, 44 A.L.R. 510, at page 513. Their estimate of value was borne out by the subsequent history of the business. Its real estate commissions, earned but only partly received, grossed $21,528.25 and its insurance commissions grossed $661.21 in the period January 15 to August 31, 1951. In that period the received commissions paid all expenses, including the commissions of salesmen, retired $3,000 of the $7500 purchase price advanced by defendants, and all of $800 of working capital so advanced, allowed the parties to withdraw $1453.02 each, and accumulated a cash balance of $2221.43. In addition the partnership has commissions due which we shall presently discuss. Notwith-

standing this indication of the great value of the good will of this business, the statute does not require the court to take it into consideration in valuing the property of the business in these circumstances. The statute provides such a sanction for causing the dissolution of a partnership wrongfully. SDC 49.0610(2) (c) (2) quoted supra. The court applied the statute.

With the most valuable asset of the business eliminated, what remained? It is agreed that a group of bills receivable were of the value of $777.47. There was cash in the amount of $2221.43. Subtracting these two amounts from $4498.90, the overall value fixed by the finding, it appears that the court estimated the remaining assets to be of a value of $1500. The evidence dealing with those items must be briefly examined.

The furniture and fixtures were described by Mr. Schumacher. He stated the original cost when he installed them several years before, and also stated that in his own mind he had valued them at $1,000 when selling the business. They were carried on the books as at a value of $452. They included a large desk, two smaller ones, a filing cabinet, a smaller cabinet, a typwriter, a counter, some chairs, neon signs, a partition, and some supplies.

In addition to the bills receivable above mentioned of the agreed value of $777.47, there were items of commission due in the amount of $8100. Most of these had been placed with attorneys for collection. Plaintiff expressed the opinion that they were good, and defendants testified they were worthless. Neither one explained the deals out of which they arose, or the worth of the debtors.

Another asset was the listings of real estate for sale. Respective customers had listed real property with the agency for sale, usually at a fixed price, and had agreed that the agency should receive a 5% commission. Here again the parties took opposing extreme positions. The defendants suggested that this list of property was embraced within the good will of the business, and therefore the court was not required to consider its value. Predicated on the testimony of a witness that particular listings with which he was familiar were of the value of 5% of the sale price named therein,

plaintiff asserts that the court was required to place a high estimate of value on these assets. Neither view is persuasive.

Although these listings may have resulted in part at least from the good will of customers toward the agency, we are firm in our conviction that they are not embraced within the concept of the good will described in the Uniform Partnership Act. According to our statutory definition "The good will of a business is the expectation of continued public patronage * *." SDC 51.0810.. Elsewhere it is defined as "* * * that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business." 38 C.J.S., Good Will, § 1, page 948. Rather than being an element of good will value, these listings take on the aspect of going concern value as that concept is customarily employed in fixing rates for utilities. Until such a list is established a real estate agency is not a going concern. Money, time, energy and skill go into its establishment. Therefore, we think it would be reasonable, in fixing the overall value of a real estate business to attach such a value to its list of property for sale as is comparable to the expense involved in its establishment. The reason it cannot be valued on an exchange basis, is that these listings are not transferable, and are revocable at will. Beck v. Howard, 43 S.D. 179, 178 N.W. 579. In the instant case, we do not understand that the trial court failed to attach any value to this asset. In arriving at the conclusion that these listings should not carry a high estimate of value, the court was undoubtedly influenced by the foregoing considerations and by the further fact that plaintiff had been with the office for several years and had secured many of these listings, and therefore, the probability was not remote that some of them would follow him out of the agency. The trial court was not supplied with any very substantial basis for estimating the value of this asset.

That the $1500 value placed on all of these described assets was conservative we do not question. However, after mature study and reflection we have concluded that the court's finding is not against the clear weight of the

evidence appearing in this record. Hence we are not at liberty to disturb it.

The brief of plaintiff includes some discussion of his right to a share in the profits from the date of the dissolution until the final judgment. It does not appear from the record that this claim was presented to the trial court, or that the net profit of the business during that period was evidenced. Because that issue was not presented below, it is not before us.

The judgment of the trial court is affirmed.

All the Judges concur.