235 F.2d 74
 AMERICAN PACIFIC DAIRY PRODUCTS, Inc., a Corporation, Appellant,
v.
Joseph A. SICILIANO, Appellee.
Joseph A. SICILIANO, Appellant,
v.
AMERICAN PACIFIC DAIRY PRODUCTS, Inc., a Corporation, Appellee.
AMERICAN PACIFIC DAIRY PRODUCTS, Inc., Appellant,
v.
PACIFIC ENTERPRISES, Inc., a Corporation, Appellee.
 Nos. 14805, 14806.
 United States Court of Appeals Ninth Circuit.
 June 20, 1956.
 
 Little, LeSourd, Palmer, Scott & Slemmons, Brockman Adams, Seattle, Wash., for appellants.
 John A. Bohn, Agana, Guam, Walter S. Ferenz, Benecia, Cal., for appellees.
 Before DENMAN, Chief Judge, and POPE and CHAMBERS, Circuit Judges.
 DENMAN, Chief Judge.
 
 
 1
 The appeals arise from two actions for both of this the district court held a single hearing, the evidence introduced applying to both cases.
 
 
 2
 The case first filed was brought by Siciliano against the American Pacific Dairy Products, Inc., a corporation, hereafter Products Co., claiming damages and other relief for an alleged breach of a partnership agreement between Siciliano and the corporation. To this Products Co. filed a cross complaint, claiming that Siciliano breached the partnership and sought damages against him and other relief.
 
 
 3
 In this first suit the court awarded damages to Siciliano for the value of his partnership on July 1, 1953, the time the court found the partnership was dissolved, for Siciliano's share of the profits earned by the partnership to that date. Products Co. appeals, claiming (a) the amount awarded for the Siciliano interest is excessive and that he is entitled to no share in the profits; (b) that the court erred in not changing the venue to the District Court of Washington and in denying a jury trial. Siciliano cross appeals on the ground that his partnership interest had a greater value and that he should share in the partnership up to the time of the trial.
 
 
 4
 The second suit was brought by Pacific Enterprises, Inc., a corporation, against the partnership of Siciliano and Proucts Co. to recover damages for labor performed for and supplies delivered to the partnership.
 
 
 5
 In the second suit Products Co. appeals and contends in its brief and argument that (a) the evidence does not support the judgment for the damages awarded; that (b) the court erred in permitting the attorneys for Pacific Enterprises to represent Siciliano; that (c) the court erred in denying a change of venue to the District Court of Washington and that (d) the court erred in denying Products Co.'s demand for a jury trial.
 
 
 6
 In the latter part of 1950 Edward Thompson, the President of Products Co., came to Guam to establish a 'Dairy Queen' store to sell a soft ice cream product. He attempted to hire Siciliano as the Guam manager of this venture since Siciliano was a successful businessman on the island owning a restaurant, a night club, a snack bar and a bakery through his corporation Pacific Enterprises, Inc. However, Siciliano wanted a 50% interest to which Thompson was unwilling to agree. Thompson then hired one Slaughter as manager and began construction of the ice cream store.
 
 
 7
 In June of 1952 the store was nearing completion but Slaughter was leaving the island. Thompson came to Guam and negotiated with Siciliano. The store opened on Nune 22, 1952. On June 23rd a series of agreements were entered into by Thompson, as President of Products Co., and Siciliano which stated that a copartnership for fifty years was created. Products Co. put $30,000 worth of assets into the venture and Siciliano purchased a one-half interest for $15,000. Thompson left Siciliano in charge of the store and returned to the United States.
 
 
 8
 On July 1, 1952, ten days after the store opened, Siciliano left Guam and came to the United States. He left employees of his Pacific Enterprises, Inc. corporation in charge of the business. Upon arrival he called Thompson and told him that he would return to Guam in a few weeks. Siciliano did not return to Guam for two years. During his absence he talked by telephone to his employees only two or three times. During this period large profits were made which were sent to Products Co. To date Siciliano has received no profits from the business.
 
 
 9
 On October 6, 1952 the Board of Directors of Products Co. passed a resolution ratifying the copartnership agreement on condition that Siciliano return to Guam. On April 4, 1953 the Board passed another resolution refusing to ratify the copartnership agreement and declaring the 'de facto partnership' at an end. Siciliano was tendered $15,000, as a return of his original investment.
 
 
 10
 Norman Thompson, the son of the President of Products Co., arrived on Guam on April 22, 1953 to assist in the operation of the ice cream store. Despite the amount of profits which had been earned, he found the store poorly managed. The sanitary conditions were not good. Large amounts of cash were not deposited to the partnership bank account. There was great delay in posting the books, the store was operated irregularly with insufficient controls. Sometime within two months of his arrival, the date is in dispute, Norman Thompson took over the business excluding Siciliano's men. In September of 1954 Siciliano sued Products Co. for an accounting, Products Co. asserted a counterclaim for similar relief, and Pacific Enterprises, Inc. sued the partnership for supplies furnished it during the period before Norman Thompson took control for Products Co.
 
 
 11
 1. The Fairness of the Trials.
 
 
 12
 Products Co. contends that it was denied a fair trial both in the partnership action and the Pacific Enterprises, Inc. suit. It first contends that it was entitled to a jury trial. It asks this court to decline to follow those decisions of the Supreme Court which establish that the Constitution is not fully applicable to the territories,[1] on the ground that they are 'outmoded due to recent social and political developments.' We considered those decisions to establish that the Constitution does not require a jury trial on Guam in Pugh v. United States, 9 Cir., 1954, 212 F.2d 761. Counsel for Products Co. has offered no explanation as to how those cases are 'outmoded,' Cf. Kinsella v. Krueger, 76 S.Ct. 886, or any argument as to why Pugh v. United States was wrongly decided. This contention must be rejected.
 
 
 13
 Products Co. argues that the Federal Rules of Civil Procedure, 28 U.S.C., gave it the right to a trial by jury. However, the Saylor Act,[2] passed on August 27, 1954 and effective retroactively as of August 1, 1950, provides:
 
 
 14
 'The rule heretofore or hereafter promulgated * * * by the Supreme Court of the United States * * * in civil cases * * * shall apply to the District Court of Guam and to appeals therefrom; except that no provisions of any such rules which authorize or require trial by jury * * * shall be applicable to the District Court of Guam unless and until made so applicable by laws enacted by the Legislature of Guam.'
 
 
 15
 This action was brought in September of 1954. In 1955 the Guam Legislature passed an act providing for trial by jury in civil cases.[3] This statute was effective as of October 1, 1955.[4] It is clear that the Federal Rules of Civil Procedure are not applicable to this case.
 
 
 16
 Products Co. was not entitled to a trial of this action by jury.
 
 
 17
 It is next contended by Products Co. that it was denied a fair trial because the District Court abused its discretion in refusing to transfer the action to a United States District Court in the State of Washington.[5] There was no such abuse here. Most of the witnesses were on Guam, and only the corporate records were in Washington. The District Court could have believed it was easier to transport documents than witnesses.
 
 
 18
 The contention that Products Co. was denied a fair trial by the District Court's refusal to grant a continuance is equally without merit. The motion was based on the failure of corporate records to arrive from Washington in time for trial. There was no showing as to what records were involved or how they might have affected the outcome of the case. Products Co. had over four months from the date the action was filed until the trial began. This was ample time to send documents from the United States to the island.
 
 
 19
 Products Co. finally asserts that it was denied a fair trial in suit on the open book account against the partnership since the same attorneys represented Siciliano, a partner, and pacific Enterprises, Inc., the plaintiff in the action. There was no unfairness here. Products Co. controlled all the partnership records and was in a position to fight the suit. In reality this was an action by Siciliano, who owned all but a few shares of Pacific Enterprises, Inc., against Products Co. which controlled the partnership.
 
 
 20
 II. The Partnership Suit.
 
 
 21
 A. The Legal Relationship of the Parties Before and After Dissolution.
 
 
 22
 1. The District Court's theory of the case.
 
 
 23
 The District Court made its computation of the value of Siciliano's partnership interest on the following theory of the case: The rights of the parties are to be determined by the formal partnership agreement signed by Thompson as President of Products Co. and Siciliano plus any necessary extrinsic evidence. Therefore this was a partnership for joint-venture for fifty years to be managed by Siciliano. Siciliano breached the agreement by leaving Guam ten days after the business opened and not returning for two years.
 
 
 24
 Under Sections 2425(1)(b) and 2426(1)(d) of the Guam Civil Code,[6] Products Co. had a right to apply to the District Court for a decree of dissolution because of Siciliano's breach of the agreement. Those Sections provide:
 
 
 25
 ' § 2425 Causes of dissolution. Dissolution is caused:
 
 
 26
 '(6) By decree of the court under Section 2426.'
 
 
 27
 ' § 2426 Dissolution by decree of court. (1) On application by or for a partner the court shall decree a dissolution whenever:
 
 
 28
 '(d) A partner willfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him.'
 
 
 29
 Such a dissolution was decreed by the Court on February 18, 1955, but it was made effective as of July 1, 1953, since that was the date Products Co. took over the business and excluded Siciliano, thereby terminating operations as a partnership. Since Siciliano caused the dissolution wrongfully, Products Co. had the right to continue the business alone by paying Siciliano the value of his interest in the partnership as of July 1, 1953. In computing the value of Siciliano's interest the good will of the business was not to be considered.[7]
 
 
 30
 2. Challenges to the District Court's Theory.
 
 
 31
 Products Co. and Siciliano raise many objections to the District Court's theory of the case. Products Co. contends that the formal partnership agreement was not binding on it since partnerships were not authorized by its charter and its President was not authorized to make such a contract. If this were true, only a joint venture at will existed, and Products Co. dissolved the venture much earlier than July 1, 1953, by notice of Siciliano.[8] However, this contention must be rejected. Under Guam law,[9] the fact that entering a partnership was not included in the corporate charter as a power cannot affect Siciliano.[10] Even assuming a corporation cannot enter a general partnership,[11] it can become a joint-venturer to carry out a specific business venture as was attempted to be done here by the agreement.[12] The sections of the Uniform Partnership Act dealing with the rights of the partners upon dissolution, Sections 2395-2472 of the Guam Civil Code, are equally applicable to joint venturers.[13]
 
 
 32
 Although Thompson, Products Co.'s President, may not have had actual authority to sign a partnership contract with Siciliano, Products Co. concedes it put him in a position where he apparently had authority to do so.[14] Moreover, the District Court properly found that by accepting the profits of the business and the benefits of its operation by Siciliano's employees the Board of Directors of Products Co. impliedly ratified the co-partnership agreement.
 
 
 33
 The effect of Thompson's apparent authority or the implied ratification was to bind Products Co. to the agreement made by Thompson and Siciliano. Section 355 of the Guam Civil Code makes this clear by providing in part:
 
 
 34
 'Any contract * * * made in the name of a corporation, which is authorized or ratified by the directors, or is done within the scope of the authority, actual or apparent, given by the directors, shall bind the corporation, and the corporation shall acquire rights thereunder * * *.'
 
 
 35
 Siciliano challenges a major premise of the District Court's theory by contending that it erred in finding that he breached the partnership agreement. He argues first that he was not required to manage the Guam operation but was given an option to do so. He relies on the following provision of the agreement:
 
 
 36
 'During the period that * * * (Siciliano) * * * shall act as manager of the co-partnership, he shall receive a salary at the rate of Six Hundred Dollars per month * * *'
 
 
 37
 However, the partnership agreement also provided:
 
 
 38
 '* * * (Siciliano) * * * agrees to devote such time, as may be mutually agreed upon between co-partners, together with his skill and energy, to the best interests of the business of the co-partnership * * *'
 
 
 39
 The District Court properly found that by their conduct Thompson and Siciliano agreed that Siciliano was to supervise the ice-cream operation on Guam.[15] Thompson's offer to Siciliano came after the previous manager had resigned, and Thompson was in Guam for the express purpose of finding a manager. Thompson had previously attempted to obtain Siciliano as Products Co.'s Guam manager because of his business skill. Thompson left Guam entrusting the business entirely to Siciliano's control. Siciliano, in fact, took over the management of the business. When he left the island ten days after Thompson's departure he delegated his management responsibilities.[16]
 
 
 40
 Siciliano next argues that he was free to delegate his managerial functions to his employees. While he undoubtedly could delegate many such functions, a major purpose of Products Co. was to have Siciliano an Guam exercising top management control over the operation. Here he did little more than to tell his employees to carry on the business and turn his back on how they conformed to his instructions. This certainly was a case where
 
 
 41
 'performance by the person delegated varie(d) * * * materially from performance by * * * (Siciliano) * * *'[17]
 
 
 42
 The District Court did not err in finding Siciliano breached the partnership agreement by failing to act as manager of the Guam operation.
 
 
 43
 Both parties urge that the District Court erred in holding July 1, 1953, as the date of dissolution. It is conceded that Products Co. owes Siciliano one-half of the net profits up to the date of dissolution. Siciliano contends that he is entitled to such a share of the net profits earned up to February 18, 1955, the date of the District Court's decree. However, the District Court is free to decree dissolution as of a date prior to its judgment when this will properly reflect the date the business ceased operating as a partnership.[18]
 
 
 44
 Products Co. contends that the District Court should have dated dissolution back to July 1, 1952, the day Siciliano left Guam. However, Products Co. accepted the profits of the business as run by Siciliano's employees until it took over the business from them. Until that point, although it was improperly operated, the ice-cream business was being run as a partnership. Section 2423 of the Guam Civil Code[19] provides:
 
 
 45
 'The dissolution of a partnership is the change in the relationship of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.'
 
 
 46
 Assuming the District Court to be correct in decreeing dissolution as of the date Norman Thompson took over the business for Products Co., it contends that this clearly had occurred by May 1, 1953, rather than July 1, 1953. It was not until July 1, 1953, that Products Co. set up the books of the Guam ice-cream business on a corporate basis. While Norman Thompson had probably excluded Siciliano or his representatives completely sometime before that date, the record is not clear when that occurred. It certainly had taken place by July 1, 1953. The District Court did not err in setting this as the date of dissolution in the absence of proof by Products Co. that it had occurred earlier.
 
 
 47
 Therefore, the District Court's theory of the case was a correct one under the Uniform Partnership Act.
 
 
 48
 B. Computation of the Value of Siciliano's Interest in the Partnership.
 
 
 49
 Both parties argue that, even though the District Court's theory of the case be of Siciliano's interest in the partnership. The District Court made the following findings of fact:
 
 
 50
 '10. At the time the plaintiff was excluded from the partnership, as of July 1, 1953, he was entitled to the following:
 
 
 51
 (a) Return of Capital ..... $15,000.00
(b) Capital improvements
 paid out of profits ..... 4,000.00
(c) One-half value of
 additional building ..... 1,150.00
(d) One-half net profit .... 16,876.75
 ----------
 $37,026.75
Less one-half judgement
 after deducting
 $1,234.95 ............... 2,649.80
 ----------
 Balance ............... $34,376.95
 
 
 52
 '11. The plaintiff is entitled to interest at six per cent per annum on.$34,376.95 for the use of his capital and profits from July 1, 1953, to the date of the entry of judgment.'
 
 
 53
 Siciliano and Products Co. agree that Siciliano was entitled to '(a) Return of Capital ..........$15,000.00' as the amount he originally invested. Siciliano argues that he is entitled to compensation for the increase in the value of the assets owned by the partnership. While this may be true, he failed to introduce evidence of any such appreciation.
 
 
 54
 Products Co. contends that the District Court erred in including in the judgment '(b) Capital Improvements paid out of net profits ..........($) 4,000.00.' This amount is one-half of an $8,000 account payable to Products Co. carried on the partnership books. It represented assets furnished the ice cream store over and above Products Co.'s capital contribution. The partnership books showed that this account had been paid and cash reduced a corresponding amount. The District Judge assumed that net profits had been reduced by this amount to obtain assets which Products Co. retained after dissolution. Siciliano received the $4,000 in item '(b)' to represent his share of these assets.
 
 
 55
 However, the District Judge did not use the partnership balance sheet which reflected this transaction when he computed the net profits of the business as shown in item '(d)'. Rather he worked from the monthly income statements of the partnership which are normally closed into the books. No deduction of $8,000 had been taken upon these monthly statements when the account payable to Products Co. was paid. Therefore Siciliano in item '(d)' received one half of the net profits as reflected on the monthly income statements plus in item '(b)' an amount to offset a reduction in those net profits which had never been made.
 
 
 56
 Item '(b)' for $4,000 should not have been in the judgment amount.
 
 
 57
 Products Co. contends that Siciliano is not entitled to item '(c) One-half value of additional building ..........($)1,150.00.' During the nine days Siciliano personally managed the ice-cream store on Guam he ordered a building constructed next to the store erected by Products Co. Products Co. now asserts that it never wanted the building. However, Siciliano was given power to manage the Guam venture and to carry on the business as he saw fit within the bounds of reasonable business practice. Products Co. cannot hold Siciliano to have breached the agreement by a failure to manage on one hand and repudiate his actions when he personally managed the store on the other.
 
 
 58
 Item '(d) One-half net profits ..........($)16,876.75' is challenged by Products Co. on the ground that this was derived from the accounts of one of Siciliano's employees which were inaccurate. Moreover, Products Co. asserts, the Court took an average month's profit for June of 1953 since incomplete records were available for that month. Products Co. fails to point out any reason why the District Court was not free to accept as accurate the accounts kept by Siciliano's employee, and we cannot say that it was 'clearly erroneous' in doing so. F.R.C.P. 52(a).
 
 
 59
 As to the computation of profit for June of 1953, the court's finding reads:
 
 
 60
 '4. During the month of June, 1953, the business was under the control of the defendant and the defendant did not submit a financial statement for such month which would be accepted as accurate. The average net profit per month was approximately $2,850.00. It is considered that with increased cost due to the manager, the net profit for the month of June, 1953, was $2,350.00. * * *'
 
 
 61
 We cannot find evidence in the record to indicate that cash receipts and expenditures paid by cash and check were average for June of 1953.[20] Such a method of computation therefore was inaccurate.
 
 
 62
 Products Co. argues that the district court improperly determined the amount deducted for the Pacific Enterprises, Inc. judgment. However, it fails to point out where in the record the computations of which is complains appear, and they cannot be found. The burden is on an appellant to make his case; not on the Court.
 
 
 63
 Siciliano argues that he is entitled to a share of the profits earned by the ice cream business on Guam from July 1, 1953, the date of dissolution, until Products Co. settles accounts rather than merely the interest the district court awarded for the use of his capital and profits. Section 2436 of the Guam Civil Code[21] provides:
 
 
 64
 'When any partner retires * * * and the business is continued under * * * the conditions set forth in * * * Section 2432(b) without any settlement of accounts as between him * * * and the person * * * continuing the business, unless otherwise agreed, he * * * as against such persons * * * may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option * * * in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership * * *.'
 
 
 65
 This court has previously construed this section of the Uniform Partnership Act. In Moseley v. Moseley, 9 Cir., 1952, 196 F.2d 663, 666-667, we held that
 
 
 66
 'The right of election which appellant has * * * (under this section of the Uniform Partnership Act) is one which he should be permitted to exercise after an accounting shall have been taken of the earnings subsequent to dissolution. Otherwise, the right of election would be an illusory one.'
 
 
 67
 The district court ordered no such accounting in this case, and no determination was made as to 'the profits attributable to the use of (Siciliano's) * * * right in the property of the dissolved partnership.'
 
 
 68
 Products Co. urges that Siciliano and it had, in the words of Section 2436, 'otherwise agreed' that Siciliano would have no such right to profits after dissolution. The basis for this argument is Siciliano's failure to reject Products Co.'s offer of a return of his original $15,000 investment. Two California cases have held that a partner has a duty to reject an offer of settlement on dissolution since a failure to object will normally be construed as an acceptance by the other partner because of their relationship.[22] Even assuming these cases to be correctly decided,[23] they do not go so far as to say that a partner must reject offers in circumstances where it should be apparent to the offerer that silence should not be so construed.
 
 
 69
 Here, in the last part of April, 1953, Products Co. sent Siciliano a copy of a resolution 'refusing to ratify' the copartnership agreement and saying it would refund to him his original $15,000 investment. It offered absolutely no portion of the $31,403.47 profit made by the ice cream store on Guam during the time it was operated by Siciliano's employees nor interest for the use of Siciliano's investment. While Siciliano's failure to exercise top management control personally was a breach of the agreement, Products Co. cannot ignore the fact that large profits were made by Siciliano's employees to whom he had improperly delegated these functions.
 
 
 70
 Products Co. could not reasonably interpret Siciliano's silence after its offer of $15,000 as an agreement that he would waive either interest or a share of the profits up to the date of dissolution nor as a consent to use his money in running the business thereafter.
 
 
 71
 The district court erred in not ordering an accounting of the profits earned by the ice cream business on Guam from July 1953 to the date of its judgment.
 
 
 72
 III. The Open Book Accounts.
 
 
 73
 Pacific Enterprises, Inc. was awarded judgment for a number of items which it furnished the partnership during the period the ice cream store was run by Siciliano's employees. The four items in dispute here are:
 
 
 74
 Item IV--Rent for reefer
 truck .................... $ 400.00
Item XI--Load of Crushed
 Coral ....................... 24.11
Item XII--Equipment owned
 by Pacific Enterprises,
 Inc......................... 180.30
Building addition ............. 2300.00
 
 
 75
 There is no evidence in the record to support the $400.00 valuation given to the rental of the refrigerator truck. The truck was used in the partnership business, but Pacific Enterprises, Inc. claimed over $1,000 for rental. The district judge merely picked an arbitrary figure to represent the value of this use. The amount for the coral was supported by the evidence despite a conflict as to whether any coral was needed. The judge was free to accept the testimony of the Pacific Enterprises, Inc. employees. The equipment charge is without foundation in the record beyond testimony that some equipment was installed and used. Nothing was introduced relevant to the value of the equipment, and the amount of $180.30 was an arbitrary amount fixed by the judge. The court's valuation of the building cannot be said to be 'clearly erroneous' when the testimony is taken in the light most favorable to support it.
 
 
 76
 The judgment are reversed and the cases remanded for proceedings in accordance with the opinion of this court.
 
 
 
 [1]
 See, e.g., Balzac v. People of Porto Rico. 1922, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627; Downes v. Bidwell, 1901, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088
 
 
 [2]
 48 U.S.C.A. 1424(b)
 
 
 [3]
 Pub.L. No. 42, 3d Guam Legis., 1st Sess., §§ 3, 4 (1955), adding Sections 680.1-680.11 to the Guam Code of Civil Procedure
 
 
 [4]
 Pub.L. No. 42, 3d Guam Legis., 1st Sess., § 4 (1955)
 
 
 [5]
 28 U.S.C. § 1404(a) provides:
 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'
 For an excellent discussion of this statute see, Note, The Scope, Effect and Review of Orders Under Section 1404(a), 8 Stan.L.Rev. 388 (1956).
 
 
 [6]
 Sections 31(b) and 32(d) of the Uniform Partnership Act
 
 
 [7]
 Section 2432 of the Guam Civil Code provides in part:
 '(2) When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:
 '(b) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property; Provided, they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable * * * and in like manner indemnify him against all present or future partnership liabilities.
 '(c) A partner who has caused the dissolution wrongfully shall have:
 'II. If the business is continued under paragraph (2)(b) of this section the right as against his copartners and all claiming through them in respect of their interests in the partnership to have the value of his interest in the partnership less any damages caused to his copartners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered.'
 
 
 [8]
 ' § 2425. Causes of dissolution. Dissolution is caused: (1) Without violation of the agreement between the partners:
 '(b) By the express will of any partner when no definite term or particular undertaking is specified; * * *'
 
 
 [9]
 Products Co. contends the effect of the partnership agreement must be determined by the law of the place of incorporation, Washington. However, Guam law is applicable under Section 408 of the Guam Civil Code which provides:
 'Any foreign corporation not formed, organized, or existing under the laws of Guam and lawfully doing business on Guam shall be bound by all laws, rules, and regulations applicable to domestic corporations of the same class, save and except such only as provide for the creation, formation, organization, or dissolution of corporations or such as fix the relations, liabilities, responsibilities, or duties of members, stockholders, or officers of the corporation to each other or to the corporation * * *.'
 
 
 [10]
 Section 355 of the Guam Civil Code provides:
 'The enumeration in the articles of the objects, purposes, powers, and authorized business of the corporation shall have no effect other than as between the corporation and its directors or officers, as an authorization to the directors and as a limitation upon the actual authority of the representatives of the corporation.
 'No limitation upon the business, purposes or powers of the corporation contained in or implied by the articles shall be asserted as between the corporation or any shareholder and any third person. * * *'
 
 
 [11]
 See 13 Am.Jur., Corporations § 823
 
 
 [12]
 See cases collected in 80 A.L.R. 1049 (1932)
 
 
 [13]
 Zeibak v. Nasser, 1938, 12 Cal.2d 1, 82 P.2d 375; Irer v. Gawn, 1929, 99 Cal.App. 17, 277 P. 1053
 
 
 [14]
 See Restatement of the Law of Agency § 49, comment b and 161
 
 
 [15]
 Cf. Williston on Constracts § 623, 629
 
 
 [16]
 Another provision in the agreement supports this view:
 'The continuance of the firm following the death of * * * (Siciliano) * * * shall be subject to the following additional terms and conditions.
 'The surviving partner shall have the sole and exclusive right to select the manager of the business and to fix the salary of said manager; Provided, However, that said salary shall not exceed the salary paid to * * * (Siciliano) * * * as of the time of the death.'
 
 
 [17]
 Restatement of the Law of Contracts § 160(3)(a). Cf. Guam Civ.Code, 2349
 
 
 [18]
 Vangel v. Vangel, 1953, 116 Cal.App.2d 615, 254 P.2d 919
 
 
 [19]
 Section 29 of the Uniform Partnership Act
 
 
 [20]
 The exhibits indicate that June, 1953, was not an average month
 
 
 [21]
 Section 42 of the Uniform Partnership Act
 
 
 [22]
 Wood v. Gunther, 1949, 89 Cal.App.2d 718, 201 P.2d 874; Meherin v. Meherin, 1949, 93 Cal.App.2d 459, 209 P.2d 36
 
 
 [23]
 This Court is not bound by California decisions after Guam borrowed the California Codes. Compare, United States v. Johnson, 9 Cir., 1950, 181 F.2d 577, with Anderson v. United States, 9 Cir., 1946, 157 F.2d 429