Mrs. J. C. KING, Appellant, v. W. J. GOLD, Appellee.

No. 44105.

December 14, 1937.

Putnam, Putnam, Fillmore & Putnam, for appellant.

Hallagan, Fountain, Stewart & Cless, for appellee.

Sager, J.—This cause presents the familiar picture of an automobile accident occurring at an intersection. It calls for the announcement of no new principles nor the extension of those heretofore laid down by us. For this reason we purposely refrain from analyzing the numerous cases cited by the parties hereto. These have been spread upon our records in recent years so frequently that "he who runs may read."

This accident occurred at the south edge of the city of Des Moines, at the intersection of McKinley avenue and South Union street. McKinley runs east and west, and South Union north and south. At the time of the accident, Colonel King, plaintiff's husband, was approaching the intersection from the north, his wife sitting beside him. His approach was upgrade, and, according to his testimony, he was driving at a speed of between 35 and 40 miles an hour. As he entered the intersection, the defendant came from the west on McKinley avenue. Defendant's approach was down a slight decline to the intersection. He was driving a gravel truck which, with its load, weighed approximately 10,000 pounds. The King car was a 1935 Chevrolet sedan. Its weight is not stated.

There is no direct conflict in the testimony of the principals to the accident because it happened so suddenly that neither

could cast much light on the movements of the other; and the arguments of the parties are devoted largely to drawing inferences from what plaintiff terms the "physical facts." While numerous cases have been cited by both parties, there is really little, if any, difference between them as to the rules of law applicable to accidents of this kind. Their differences arise from the deductions which they make from the circumstances disclosed by the record.

Without attempting to give the many details which may be found in the testimony of Colonel King (plaintiff's husband), this, in substance, appears to be his version of the accident:

He had never driven over this road before. As he approached McKinley avenue from the north he came by way of "quite a steep grade." On the morning of this accident, June 23, 1936, as he was going south on South Union street, the up-hill road upon which he was proceeding was lined on both sides with undergrowth, brush, and saplings, with high weeds on both sides. He testifies that he had no knowledge that there was an intersection at the top of the hill, and saw neither it nor a stop sign which was located approximately 30 feet north of the graveled portion of McKinley avenue. Quoting him as to the method of his approach, he says:

"I wasn't looking for a stop sign as I was watching the road straight ahead. As I was driving down South Union Street I was watching the road ahead. I wasn't gazing around looking at the scenery, and the road comes right over the top of the hill. I didn't notice or see the intersection until I was right on it. I was into the intersection when there was a—just a sort of a flash out of the tail of my eye and something struck me from the right rear, hit my car on the right rear corner."

According to his, and other, testimony, his car proceeded from 80 to 90 feet after the collision and landed on its right side on the east side of South Union street, and to the south of the intersection where the collision occurred. According to his view the truck went about 30 feet down a slight grade and stopped. The truck was not overturned and the gravel it was carrying remained undisturbed until dumped before the truck was taken away.

Plaintiff adds nothing to this testimony beyond saying that she could not see the intersection and saw no stop or other sign

as they approached the intersection. The accident occurred so suddenly that she was unable to cast much light upon it.

This, in substance, constitutes plaintiff's case. There are, of course, many incidental features not here set out, and which plaintiff claims were sufficient to have carried the case to the jury.

Turning then to defendant's testimony, it appears that he was thoroughly familiar with this intersection; in fact, he had been engaged for several weeks, and was then engaged, in hauling gravel for the repair of McKinley avenue. A fellow-worker, one Hartley, was driving behind defendant at a distance of about 20 or 30 feet. Hartley says that defendant came into the intersection so slowly that he (Hartley) had to come to a stop; that as defendant got into the intersection and into the traffic lane north and south, a car "shot through like a flash" and struck defendant right in the front part of the truck. This witness goes on to describe a second contact, and the final release of the car and its passage to the point where it turned over. He claims to have talked with plaintiff's husband, who, he says, admitted that he was going pretty fast, but claimed he could not see the stop sign or the intersection. This witness made no attempt to go north of the stop sign which he said was there, but he knew of its presence and testifies that there was quite a bit of brush along the road at that point. It is his view, contrary to that of plaintiff and her husband, that the intersection could be seen without any trouble whatsoever. This witness further testifies that the horn signalled as the defendant slowed down at the intersection. He differs somewhat in his statement of the distances given by plaintiff's husband in this: That he says the cars were 60 to 70 feet apart when they came to rest, and that it was 119 feet from where the accident started.

The defendant admits the driving of the truck involved and makes no denial of his familiarity with the crossing. He says the accident happened on a bright, sunshiny morning. He knew of the stop sign at the northwest corner of the intersection, which he located about 30 feet back from the edge of the gravel. As he came to the corner he "tooted" his horn from one to two or three times. He heard no signal from any other vehicle, and as he entered the intersection looked north and saw a car about 100 feet or so away. He was just about in the right-hand wheel track when he discovered that the approaching car was not

going to stop. At that instant the two cars came together. The truck was taken out of its course and came to rest at approximately the southeast corner of the intersection, where it broke a stop sign. The defendant said that as he entered the intersection he was going not over three or four miles an hour; and that plaintiff's husband did not veer his car or change its course from the time defendant saw him until the crash came. It is his testimony that three or four miles an hour was about as fast as he could go, and that he entered the intersection at about that rate of speed; that he brought his truck to practically a stop before going across the west line of the intersection, and kept going until he saw that the King car was not going to stop. At that instant the collision occurred, with the resulting injuries of which plaintiff complains.

■■■ Plaintiff relies upon three allegations of negligence which may be summed up as: First, driving at an excessive and unreasonable rate of speed in view of the conditions; second, failing to keep a proper and timely lookout; third, driving voluntarily into a zone of danger, knowing of its existence and knowing of the close proximity of the King car.

The motion to direct, of course, is in substance predicated upon the claim that plaintiff had failed to carry the burden of proving any or all of these grounds. The court, accepting the defendant's view, sustained the motion at the close of all the testimony. We are satisfied that in so ruling the court was right.

■■ Without passing upon the question whether plaintiff's husband was exercising the proper degree of care in approaching this intersection, the presence of which was unknown to him, it is sufficient to say that the defendant could in nowise be charged with any fault on that account. Though Colonel King may not have known of the presence of the stop sign and may have been blameless in not seeing it because of the obstructions, the undisputed fact is that the defendant knew that the stop sign was there facing north against the traffic coming down South Union from that direction. Moreover, had no such sign been there, defendant would have had the right of way against traffic coming from the left, under the statute, Code 1935, §5035, and under our decisions.

■■■ There is an intimation in plaintiff's argument that there is no proof that the stop sign was placed there by proper

authority. There is no merit in this contention for the reason that a traveler must have the right to assume that highway signs having the appearance of regularity are placed by proper authority.

There is no contradiction of the testimony of the defendant with reference to his movements, except, as plaintiff contends, the nature of the accident, the position of the cars, and marks on the intersection. This, plaintiff contends, warranted the submission of the question of defendant's negligence. Without presuming to pass upon the weight of the testimony, which would have been for the jury had a jury question been presented, we can say that the circumstances would seem to negative rather than affirm plaintiff's claim of negligence in this regard.

This will be sufficient to illustrate our view: The defendant was driving down a decline a truck which, with its load, weighed approximately 10,000 pounds. His speed was not to exceed four miles an hour. The King car, driven uphill at a speed of thirty-five or forty miles an hour, came in contact with this heavy truck, deflecting the course of the truck to the southeast corner of the intersection, and then proceeded a considerable distance beyond. We have examined and re-examined the testimony and have been unable to discover wherein the court would have found justification for submitting to the jury any charge of negligence on the part of the defendant.

Plaintiff places considerable stress upon Parrack v. McGaffey, 217 Iowa 368, 373, 251 N. W. 871, 873, and quotes therefrom the so-called "physical fact rule," and goes on to quote:

"It is the settled rule of law, where one voluntarily places himself in a position of danger which can be seen and appreciated, he is guilty of contributory negligence, as a matter of law." (Citing cases.)

This rule, and others announced in cited cases, may be admitted as stating the law without affording any relief to plaintiff. So, too, the citation of Sexauer v. Dunlap, 207 Iowa 1018, 222 N. W. 420, to the effect that one unfamiliar with the highway and unaware of his approach to an obscured intersection is not guilty of negligence in failing to observe the laws of the road. This rule may well justify the conduct of Colonel King without attributing any negligence to the defendant.

What has been said obviates the necessity of commenting on the further complaints urged by plaintiff on the refusal of the court to submit various questions of negligence involved or presented by the pleadings.

One other complaint remains to be considered. That has to do with the alleged error on the part of the court in taking a part in the examination which was being conducted by plaintiff's counsel of the witness Hartley. While the court might well have refrained from the comment of which complaint is made, we have been unable to find any prejudicial error therein, particularly since the subject-matter of the record at this point would not change the result we have announced.

Finding no error in the action of the trial court, this case is affirmed.—Affirmed.

HAMILTON, C. J., and ANDERSON, DONEGAN, RICHARDS, KINTZINGER, MITCHELL, and STIGER, JJ., concur.