BURMEISTER, Respondent v. YOUNGSTROM et al., Appellants

(139 N.W.2d 226)

(File No. 10182. Opinion filed December 28, 1965)

Rehearing denied January 31, 1966

**Morgan & Fuller,** Mitchell, for defendants and third-party plaintiffs and appellants.

**Shandorf & Bleeker,** Mitchell, for plaintiff and third-party defendant and respondent.

HOMEYER, J. This is an action for damages for an alleged wrongful death resulting from a collision between an automobile driven by Ewald Burmeister and a farm truck owned by the defendant, James Sharp, and driven by the defendant, Glen Youngstrom. The plaintiff, Ewald Burmeister, brings the action as administrator of the estate of his wife, Irene, who was killed in the accident, for the benefit of himself and their five minor children. The jury by its verdict fixed damages at $18,988.22. Defendants appeal from the judgment entered on the verdict.

The accident occurred at approximately 6:10 p. m. on Sunday, July 28, 1963, at a right angle intersection of two graveled county roads about two miles east and six miles south of Mount Vernon, South Dakota. Burmeister with his wife as a passenger in the front seat was traveling south and the defendants' truck was proceeding west. James Sharp was seated next to the driver and his wife was to his right. At this intersection a shelter belt with heavy dense undergrowth is located along the north side of the east-west road and extends eastward from a fence

line on the east side of the north-south road for approximately one-half mile. There is a single stop sign located at the northeast corner of the intersection which controls traffic moving westward on the east-west road. The Burmeisters lived about three and one-half miles southwest of the intersection and the Sharps about one-half mile east of it. All parties involved were familiar with the intersection and had traveled these roads many times and had knowledge of the location of the described stop sign. From between the stop sign and the east edge of the north-south road, which measured 25 feet, a driver proceeding west can see north for about one-quarter mile. The traveled portion of each roadway was about 23 feet in width.

The evidence viewed in a light most favorable to the plaintiff establishes that Burmeister was driving at his normal speed of about 50 to 60 miles per hour and saw the truck when he was about 175 feet north of the center of the intersection; that he let up on the gas. When the truck failed to stop at the stop sign he slammed on his brakes. The front end of his automobile struck the right door of the cab of the truck; the point of impact was slightly west of the center line of the north-south road and slightly north of the center line of the east-west road. Skid marks caused by the Burmeister vehicle measured 59 feet straight north of the point of impact and the automobile came to rest on the roadway in the south-west quadrant of the intersection 13.6 feet from the place of collision. There were no skid marks caused by the truck and it traveled about 47 feet after the collision, sheered off a braced corner fence post and ended up in a field off the roadway faced southwesterly.

A deputy sheriff called as a witness by the defendants testified that a few days after the accident he made measurements to determine the range of vision to the east of a driver who approached the intersection from the north. His testimony was that from a point 50 feet north of the north edge of a prolongation of the east-west road, he could see traffic approach the intersection from the east for a distance of 169 feet. At 45 feet, he could see it for 180 feet and at 40 feet, he could see it for 200 feet. He also testified that the north-south road was not posted for any speed limit.

■ Defendants' principal assignment of error is based on the trial court's refusal to give the following requested instruction:

"A statute of this state provides that it shall be unlawful for any person to drive a motor vehicle on a highway located in this state at a speed greater than is reasonable and prudent under the conditions then existing; and it shall be unlawful for any person to drive a motor vehicle on a highway at a speed in excess of 15 miles per hour when approaching within 50 feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last 50 feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of 200 feet from such intersection.

"This statute sets the standard of care of the ordinarily careful and prudent person.   *   *   *"

The instruction is predicated on SDC 1960 Supp. 44.0303, subsection (6)(d), which imposes speed restrictions and defines what is commonly termed a "blind intersection".

We believe the trial court did not err in refusing to give the requested instruction.

■ SDC 1960 Supp. 44.0321, as amended by Ch. 225, Laws of 1961, provides:

"The State Highway Commission with reference to State highways and local highways with reference to highways under their jurisdiction are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop or to yield and before entering or crossing such designated highways shall be certain that such main traveled or designated highway shall be free from oncoming traffic which may affect safe passage. It shall be unlawful for the driver of any vehicle to fail to comply with the provisions of this section.   *   *   *"

The substance of this statute along with other rules of the road imposing the proper standard of care to be exercised by the parties under the circumstances was included in the court's instructions. In our opinion the blind intersection statute is subordinate to the quoted statute and renders inapplicable the speed restriction of 15 miles per hour under the facts in this case. Any other construction would render practically meaningless the erection of stop signs at intersections where visibility was impaired or obstructed within the prescribed distances. We do not believe it was so intended by the legislature.

■ ■ Of course, the presence of a stop sign does not relieve a motorist of the duty to use the favored highway with reasonable care and with due regard to the safety of others, Robertson v. Hennrich, 72 S.D. 37, 29 N.W.2d 329, but where the driver upon a road knows it is protected by a stop sign at an intersection with another road he can reasonably assume until the contrary is observed that a motorist approaching the intersection on an intersecting road will stop, look, and yield the right-of-way to the driver on the favored road. Vlach v. Wyman, 78 S.D. 504, 104 N.W.2d 817; Roth v. Jelden, 80 S.D. 40, 118 N.W.2d 20. A traveler has a right to assume that a stop sign at an intersection with an appearance of regularity has been placed there under proper authority, King v. Gold, 224 Iowa 890, 276 N.W. 774, Bell v. Crook, 168 Neb. 685, 97 N.W.2d 352, 74 A.L.R.2d 223, and for its obvious purpose.

We have considered the case of Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438, cited by defendants, which involved a collision at an intersection where the driver's view was obstructed within the statutory definition. In that case there was no stop sign and we view it as no authority for the requested instruction or other questions raised by appellants. Neither do we feel what was said in Anderson v. Lanning, 74 S.D. 161, 50 N.W.2d 57, necessitates such instruction unless the highway so favored is zoned and posted with signs disclosing maximum permissible speeds.

■ The trial court under proper instructions submitted the issues of negligence of the defendants, the contributory negli-

gence of Ewald Burmeister and of his deceased wife, and the comparative extent thereof, and proximate cause to the jury. The evidence pertaining to these issues and the permissible inferences therefrom was conflicting. Such matters were all resolved by the jury and the verdict is amply supported by credible evidence.

Defendant Youngstrom is a stepson of the defendant Sharp. Youngstrom lived four miles west and one-half mile south of Mount Vernon. Earlier in the day he, his wife, and family had driven their car to the Sharp home. The Sharps were invited to the Youngstrom home for supper that evening and Mrs. Youngstrom and family had departed earlier in their car and Mr. Youngstrom had stayed on. At the time of the accident he was driving the truck to transport the Sharps to the Youngstrom home in response to the supper invitation. It was his custom to drive when accompanied by the Sharps because he had a severe arthritic condition in his spine and the steering wheel served as a brace. Because of this condition, his peripheral vision was limited and to see to the right or left to any great degree he had to turn his whole body.

The complaint alleges that at the time and place of the accident the truck had been entrusted to Youngstrom and was being driven with Sharp's knowledge, consent and permission. Specific acts of negligence are averred and the wrongful death is claimed to have been caused by the "joint, combined, concurrent and negligent acts of both of the defendants and each of them as herein alleged." Though no model for clarity and precision in pleading, we believe the complaint when considered in its entirety is sufficiently broad to permit plaintiff to recover on the basis of either separate torts of the defendants, joint torts, or on the theory that the defendant, Youngstrom, was the agent of the defendant Sharp. The defendants answered jointly and all defenses were urged jointly. No motion was made for a more definite statement and no objection to evidence tending to establish an agency relationship was raised during the trial. The sole objection was made on the settlement of instructions, when exception was taken that the complaint did not allege an agency relationship.

By statutory mandate, SDC 1960 Supp. 33.0915, we are required to construe a pleading liberally for the purpose of determining its effect with a view of doing substantial justice between the parties. See Baker v. Jewell, 77 S.D. 573, 96 N.W.2d 299. Courts do not favor objection to pleadings in the manner attempted in this case and to justify the objection interposed, it must appear that the defect relied upon is such that it could not be cured by an amendment to conform to the proof. Knapp v. Brett, 54 S.D. 1, 222 N.W. 297. The proof here was sufficient to sustain a finding of an agency relationship. Under the circumstances, we are of the opinion that the court did not err in submitting the issue of agency to the jury for determination.

After the action was started the defendants made application and obtained an ex parte order permitting them to serve a third-party complaint upon Ewald Burmeister in which they sought judgment against him individually for all sums that might be adjudicated in his favor in a representative capacity. The trial court refused to submit the issues raised by the third-party proceedings to the jury. We believe it was correct in such refusal.

SDC 44.0362 bars recovery by a guest without compensation unless the accident was caused by the wilful and wanton misconduct of the owner or operator of the motor vehicle. The third-party complaint contained no allegation, nor did the proof justify a finding that the third-party defendant was guilty of wilful and wanton misconduct. There is no contention that Mrs. Burmeister, had she survived, or her personal representative would have a cause of action against Ewald Burmeister.

At common law and prior to 1945 in this state no right of contribution existed among joint tortfeasors. Wallace v. Brende, 66 S.D. 582, 287 N.W. 328; Brown v. Murdy, 78 S.D. 367, 102 N.W.2d 664. In that year, the Uniform Contribution Among Tortfeasors Act, Ch. 167, Laws of 1945, now SDC 1960 Supp. 33.04A, was adopted. Any right of the defendants to contribution from Ewald Burmeister must necessarily, therefore, depend on the provisions of that Act.

The first section of the Act defines joint tortfeasors: "For the purposes of this Act the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

The next section states that the right of contribution exists among joint tortfeasors; that a joint tortfeasor is not entitled to money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof. Other sections prescribe the procedure to be followed to secure such a determination and provides that the "plaintiff shall amend his pleadings to assert against the third-party defendant any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant.   *   *   *"

The Maryland court discussing these sections said in Baltimore Transit Company v. State to Use of Schriefer, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460: "We think these provisions make it clear that the Act (Joint Tortfeasors Act) is only applicable to a situation where there is a common liability to an injured person in tort. Such liability may be joint or several, but there can be no contribution where the injured person has no right of action against the third-party defendant. The right of contribution is a derivative right and not a new cause of action.

"In the Commissioners' notes to the Uniform Contribution among Tortfeasors' Act,   *   *   * it is stated: 'The common obligation contemplated by this Act is the common liability of the Tortfeasors to suffer adverse judgment at the instance of the injured person whether or not the injured person elects to impose it.' And it is further stated that the Act 'permits contribution among all tortfeasors whom the injured party could hold liable jointly and severally for the same damage or injury'   *   *   *."

We believe it abundantly clear that the right to contribution is determined by whether there is joint or several liability rather than by the presence of joint or concurring negligence. There can be no right to contribution unless the injured party has a possible remedy against two or more persons. Any

other holding would render Ewald Burmeister as a third-party defendant liable indirectly upon a claim which could not be asserted against him in a direct action. To hold that Burmeister who would not be liable for his wife's death without wilful and wanton misconduct, Scotvold v. Scotvold, 68 S.D. 53, 298 N.W. 266, could nevertheless be compelled to contribute to the defendants, Youngstrom and Sharp, for all or part of any judgment recovered against them arising from the same accident would in effect deprive him from all benefit conferred by the guest statute. We do not believe the Uniform Contribution Among Tortfeasors Act was so intended or can reasonably withstand such construction.

This interpretation of the Uniform Act is supported by Lutz v. Boltz, 9 Terry 197, 48 Del. 197, 100 A.2d 647, a guest case, and Guerriero v. U-Drive-It Co. of New Jersey, 22 N.J.Super. 588, 92 A.2d 140. See also Patterson v. Tomlinson, Tex.Civ.App., 118 S.W.2d 645; Mitchell v. Gooch, Tex.Civ. App., 210 S.W.2d 834; Downing v. Dillard, 55 N.M. 267, 232 P.2d 140. The latter two states have guest statutes and New Mexico has adopted the Uniform Act. It appears that the right to contribution among joint tortfeasors was raised under statutes and rules of civil procedure applicable to third-party practice. In accord generally are cases cited in the annotation, 19 A.L.R.2d 1003, and the general principles set forth in 18 Am.Jur.2d Contribution, § 49.

Cases from other jurisdictions which appear to be in the minority that allow contribution without joint or several liability have been reviewed. We are not disposed to align ourselves with the views therein expressed.

Other errors assigned and argued have been considered and found to be without merit.

Affirmed.

ROBERTS, P. J., and RENTTO, J., concur.

BIEGELMEIER and HANSON, JJ., concur specially.

BIEGELMEIER, Judge (concurring).

I concur in the opinion. However, as counsel cited, dis-

cussed and the opinion mentions Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438, this impels some comment. Our comparative negligence statute was patterned after a Nebraska statute, and it has been questioned whether Point 7 of the Friese opinion correctly followed the construction the Nebraska Supreme Court had placed on its statute if the interpretation in our Friese opinion was to deny recovery by considering the negligence of one of the parties standing alone as slight without comparing it to that of the other party. See Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734. The Nebraska court construction was, the negligence of the parties "must be compared one with the other in determining an issue of slight and gross negligence." Bezdek v. Patrick, 167 Neb. 754, 94 N.W.2d 482. See also Comparative Negligence, an article by Judge Hanson in the July 1962 South Dakota Bar Journal.

While Judge Homeyer's opinion mentions the Friese case in a different aspect and the construction has now been settled by our legislature when they adopted the Nebraska standard in Ch. 149, of the Laws of 1964, this concurring note is added. Judge HANSON is in agreement with these views.