Berl D. OLESEN, Special Administrator of the Estate of Barbara Olesen, Plaintiff and Respondent,

v.

Robert Harold SNYDER and Gene Raymond Terland, Defendants and Appellants,

and

Robert James Bennett, Defendant and Respondent.

No. 11783.

Supreme Court of South Dakota.

Dec. 31, 1976.

Robert B. Looby, Pierre, for plaintiff and respondent.

E. D. Mayer of Riter, Mayer, Hofer & Riter, Pierre, for defendants and appellants.

Charles M. Thompson of May, Porter, Adam, Gerdes & Thompson, Pierre, for defendant and respondent.

DUNN, Chief Justice.

This is a wrongful death action by the father of decedent Barbara Olesen as administrator of her estate. The action was originally started in United States District Court for the District of South Dakota, Central Division, in December 1973. Because of lack of diversity of citizenship it was remanded to the Fourth Judicial Circuit Court on January 30, 1974. Plaintiff alleges in his complaint that defendant-respondent Bennett (hereinafter Bennett) on or about December 21, 1972, while decedent was riding with him, "lost control of his automobile, struck a guard rail and came to a stop in the South lane of West bound traffic" on Interstate 90 in Brule County. Plaintiff further alleges that an automobile owned by defendant-appellant Terland and driven by defendant-appellant Snyder (hereinafter defendants) "in a careless, reckless and negligent manner * * * struck the parked automobile * * *." The complaint states that "as a direct and proximate result of the negligence of the defendants, Barbara Olesen was killed."

Depositions were taken. Bennett then moved for summary judgment on the grounds that decedent was a guest in his vehicle, that there was no wilful or wanton misconduct on his part, and that as a matter of law plaintiff could not recover because of the guest statute. SDCL 32–34–1.[1] The motion was denied. Additional depositions were taken. The same motion was again made by Bennett. The court granted summary judgment, dismissing Bennett from the complaint and from defendants' cross claim. While defendants appealed the judgment, plaintiff did not appeal. We affirm.

On the evening of December 19, 1972, Bennett told decedent and her boyfriend, Gary Myers, that he was planning to go from Chamberlain to Mitchell the next evening to pick up some car parts. The next day at about noon, decedent asked Bennett if she could ride with him to Mitchell if Myers was unable to drive. Bennett agreed to meet her at about 6 p.m. that evening. Decedent was unable to contact Myers during the day and she left with Bennett. As they were leaving Chamberlain, they met Myers. There was a discussion about whose car to take. Bennett prevailed, primarily because his car had recently been repaired and he wanted to check it.

Although Bennett's avowed purpose in going to Mitchell was to pick up some car parts, which he did, and Myers and decedent wished to do some Christmas shopping, which they did not do, there was a mutual understanding that they would end up at the apartment of Linda Olesen, decedent's sister. Others from Chamberlain were also

---

1. "No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought."

planning to meet at this apartment. After stopping to pick up some car parts at two different locations, the three, along with a fourth person accompanying them from Plankinton, bought some beer and went to Linda's apartment, arriving sometime between 9 and 10 p.m. At the apartment, a party was in progress to celebrate the birthday of one of Linda's roommates.

After eating and drinking there, Bennett, Myers and decedent endeavored to return to Chamberlain along Interstate 90. It was shortly after midnight. Myers and decedent, riding in the front seat, fell asleep on the way. While enroute, Bennett reached below the dashboard to turn down or to turn off the car heater. The car crossed from the right lane to the left lane and struck a guardrail, then it hit a bridge. Bennett struck his collarbone on the steering wheel and his knee on the dashboard. Myers hit the back of his head on the windshield. Bennett maintained that decedent did not strike her head, and both Myers and Bennett stated that Bennett placed his arm in front of decedent as the collision occurred.

The three alighted and viewed the damage. Apparently, no attempt was made to move the car from its position where it was diagonally blocking the south westbound lane. Any attempt may have been futile, however, because the left rear wheel was broken and the fan was through the radiator. Bennett rode with a truck driver into Chamberlain. Before he left, he requested Myers to stay to insure that no one hit his car. Bennett and Myers claimed that Bennett turned the car lights on. (The lights had been turned off when Bennett's knee struck the dashboard.) Bennett claimed he gave Myers a flashlight, but Myers was unsure of this. Myers and decedent returned to the car because of the cold temperature outside. There Myers and decedent chatted.

Another truck driver approached from the east; he did not see any lights on the car, but he did see persons in the car as he passed. He stopped on the right shoulder of the highway slightly ahead of the car. Defendants were traveling west on Interstate 90. Terland was asleep. Snyder saw the lights of the truck parked along the right side of the highway ahead and went into the left lane to go around it. He struck the Bennett car. It is uncertain which collision caused decedent's death. A pathologist stated that decedent could have suffered her head injuries in the first collision and been able to talk and walk around, but could later have died from those injuries.

The complaint seeks $100,000 damages and costs. In his answer, Bennett raised two affirmative defenses—contributory negligence on the part of decedent in returning to the car and the guest statute. He also cross claimed against defendants for indemnity, stating that their negligence in failing to keep a lookout was a superseding intervening cause of decedent's death. In their answer, defendants raise contributory negligence of decedent and driving while under the influence of an alcoholic beverage as needless and careless conduct by Bennett. In their cross claim against Bennett, they pray for indemnity or contribution.

█ Bennett contends that because plaintiff did not appeal the judgment within 120 days, SDCL 15–26–2, he has no standing in this appeal, and that defendants are unable to maintain their cross claim because Bennett is no longer a co-party, SDCL 15–6–13(g). SDCL 15–26–1(1) provides that an appeal may be taken from a judgment, but that section does not define who may appeal. Section 3145 of the Revised Code of 1919 limited the right of appeal to a "party aggrieved." This language was deleted in § 33.0701, SDC 1939 (now SDCL 15–26–1); however, this court has held that the right of appeal remains so limited. *Board of Supervisors for Big Sioux Township v. Bailey,* 1974, S.D., 222 N.W.2d 389; *Carlson v. West River Oil Co.,* 1954, 75 S.D. 333, 64 N.W.2d 294. In addition, the "party aggrieved" must have been a party at some stage to the action or proceeding below. *In Re Johnson's Estate,* 1938, 66 S.D. 256, 281 N.W. 113.

In the case at bar, defendants were clearly parties to the proceeding below. The question then becomes whether defendants were "parties aggrieved" by the decision below. We believe they are. One ground upon which the trial court dismissed defendants' cross claim was that because the court was granting summary judgment on the basis of the guest statute the duty Bennett owed decedent of refraining from wilful and wanton misconduct was not as great as the duty owed by defendants of refraining from ordinary negligence. Thus, there could be no indemnity by or contribution from Bennett.

■ Defendants are precluded from indemnity by our holding in *Degen v. Bayman*, 1972, 86 S.D. 598, 200 N.W.2d 134. Their negligence, if any, was failure to maintain an adequate view ahead of their vehicle while traveling on the highway. In order to be entitled to indemnity, defendants must be without personal fault, and liability must be imposed solely by operation of law. Defendants cannot be held guilty of negligence here unless personal fault is shown, and no indemnity against Bennett would flow from this personal negligence.

■ On the issue of contribution among joint tort-feasors, SDCL 15–8–11 defines joint tort-feasors as

"two or more persons jointly or severally *liable in tort* for the same injury to person or property * * *." (emphasis supplied)

This court has held that the right to contribution "is a derivative right and not a new cause of action." *Burmeister v. Youngstrom*, 1965, 81 S.D. 578, 139 N.W.2d 226; see Annot., 26 A.L.R.3d 1283. If plaintiff is precluded from recovery because of the guest statute, Bennett cannot be "liable in tort" for the injury, and defendants cannot receive contribution from Bennett. If, however, decedent is found to be a passenger rather than a guest, a breach of the same duty of ordinary care, SDCL 20–9–1, could make Bennett "liable in tort" and allow contribution to defendants. Defendants are surely "parties aggrieved" by the decision of the trial court, and they may appeal the court's decision as it affects them and plaintiff.

■ Before we address the question of whether the facts of the case warrant granting summary judgment on the application of the guest statute, we must confront two alternative arguments of defendants. First, defendants urge that although plaintiff did not plead wilful and wanton misconduct by Bennett the issue should be tried on the allegation of Bennett's negligence. Defendants cite *Antonen v. Swanson*, 1951, 74 S.D. 1, 48 N.W.2d 161, wherein this court held that upon a complaint alleging wilful and wanton misconduct relief could be had on ordinary negligence. Defendants argue that the reverse should be permitted. They cite no case which has so held, and we have been unable to find one. Instead, it appears this claim has been rejected. *Bentson v. Brown*, 1925, 186 Wis. 629, 203 N.W. 380; *Astin v. Chicago, M. & St. P. R. Co.*, 1910, 143 Wis. 477, 128 N.W. 265. Plaintiff did not allege wilful and wanton misconduct specifically or generally or any facts which might infer such conduct on the part of Bennett, nor did he attempt to file an amended complaint or ask leave to reply to Bennett's answer. The complaint herein does not place wilful and wanton misconduct in issue.

■ Defendants next contend that even if a guest relationship existed that relationship had terminated at the time of the first collision, and Bennett was under a new obligation to render aid to decedent. SDCL 32–34–3.[2] In *Tubbs v. Argus*, 1967, 140 Ind.App. 695, 225 N.E.2d 841, the court held that a guest relationship had terminated when an accident occurred. The defend-

---

**2.** "The driver of any vehicle involved in any accident resulting in injury or death to any person or damage to property * * * shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical treatment if it is apparent that such treatment is necessary or is requested by the injured person."

ant's failure to render aid to his injured passengers could be found to be an independent act of negligence. However, in *Tubbs,* the complaint clearly alleged this failure to act after the accident. Here, plaintiff did not allege any duty of Bennett to render aid to the decedent, nor any failure to do so. The claim was not presented below and is not before us. *Berry v. Benner,* 1966, 81 S.D. 610, 139 N.W.2d 285; *Drashner v. Sorenson,* 1954, 75 S.D. 247, 63 N.W.2d 255; *Utah Idaho Sugar Co. v. Temmey,* 1942, 68 S.D. 623, 5 N.W.2d 486; *Noyes v. Brace,* 1897, 9 S.D. 603, 70 N.W. 846.

■■■ Defendants claim that Bennett received a benefit from decedent so as to remove the relationship from the guest statute. The claimed benefit was admission to the party at Linda Olesen's apartment. Although numerous depositions were taken, there were no depositions from persons from Chamberlain attending the party except those of Bennett and Myers. Evidently, others knew of decedent's plans and were to meet at the apartment in Mitchell. Linda Olesen's statement that she did not know her sister was coming until she arrived further confuses the question of a planned event. However, we conclude that when the trial court originally denied the motion for summary judgment and requested further depositions, plaintiff and defendants were alerted to the problems involved. Any available evidence on the issue should have been explored and developed at that time. Under SDCL 15–6–56(e),[3] once a motion for summary judgment is made and supported (as by the depositions here), the nonmoving party has the burden of showing specifically that there is a genuine issue. The depositions taken do not specifically or even generally verify that Bennett received a "real, tangible, and substantial" benefit

from transporting decedent which was "the inducing cause of the transportation" and "completely overshadow[ed] any considerations of mere hospitality growing out of friendship," *Scotvold v. Scotvold,* 1941, 68 S.D. 53, 64, 298 N.W. 266, 271; *Peterson v. Snell,* 1964, 80 S.D. 496, 127 N.W.2d 142.

Affirmed.

All the Justices concur.

■■■■■■■■

3. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."