Kenneth Bruce DEHN; Luann Patrick, formerly known as Luann Carlisle; and Lyle Musilek, Plaintiffs and Appellees,

v.

Robert PROUTY and Automated Farm Supply Company, Inc., Defendants and Appellants.

No. 13512.

Supreme Court of South Dakota.

Argued April 27, 1982.

Decided July 7, 1982.

Rehearing Denied Aug. 11, 1982.

Jerry D. Johnson of Banks & Johnson, Rapid City, for plaintiff and appellee Dehn; John E. Fitzgerald of Nelson & Harding and Randal E. Connelly, Rapid City, on brief.

Franklin J. Wallahan of Hanley & Wallahan, Rapid City, for plaintiff and appellee Patrick; Allen G. Nelson of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on brief.

Donald A. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellee Musilek; James S. Nelson of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell and Harold E. Shaw, Rapid City, on brief.

Thomas G. Fritz of Lynn, Jackson, Shultz & Lebrun, P. C., Rapid City, for defendant and appellant Automated Farm Supply Co., Inc.

HENDERSON, Justice.

## ACTION

Appellants Robert Prouty [1] and Automated Farm Supply Company, Inc., appeal from a judgment by the trial court which, pursuant to a jury verdict, made the following adjudgments: appellee Kenneth Bruce Dehn to recover $2,500 from appellants; appellee Lyle Musilek to recover $1,500 from appellants; and appellee LuAnn Patrick, f/k/a LuAnn Carlisle, to recover $47,500 from appellants. These awards stemmed from injuries and damages resulting from a multi-vehicular accident which occurred on March 6, 1978. We affirm the judgment against Prouty and reverse and remand as particularized below.

1. Pursuant to this Court's order of March 29, 1982, Prouty was reinstated as a party appellant to this appeal. Prouty has not, however,

## FACTS

Although some inconsistencies exist among the testimony of the various witnesses, the following is a brief summary of events relevant to this appeal.

LuAnn Patrick was driving alone in her car on Interstate 90 north from Rapid City to Sturgis on March 6, 1978. Weather conditions were poor as it was sleeting and there was some ice on the road. Ms. Patrick testified that she was traveling at approximately 45 m.p.h., but other witnesses whom she passed prior to the accident believed that her speed was considerably greater. After coming over a crest in the road, Ms. Patrick lost control of her car; it spun around several times, hit a guardrail and came to rest in the road, resting diagonally in the passing lane underneath an overpass.

Lyle Musilek was driving behind Ms. Patrick and observed that she lost control of her car. Musilek slowed down, activated his emergency flashers, and, upon paralleling the Patrick car from the inside lane (testimony varied whether Musilek brought his vehicle to a complete stop) asked Ms. Patrick if she was alright; she nodded affirmatively.

Following the Musilek car was a car driven by Kenneth Dehn. He, too, saw that Ms. Patrick's car was positioned sideways in the road and he accordingly slowed to a stop almost directly behind the Musilek car. At this time, an eighteen wheeler semi truck driven by Robert Prouty, an employee for Automated Farm Supply, crested the hill overlooking the scene which was approximately $\%_{10}$ of a mile away. Prouty apparently made little effort to reduce the speed of his truck and attempted to drive around the other cars without slowing down. The positioning of the cars, however, made such a maneuver impossible. Consequently, Prouty's truck rear-ended the Dehn car which in turn struck the Musilek car. Prouty's truck apparently also struck the

filed an appellate brief nor has he alleged any error by the trial court. We find no justiciable appellate issue regarding Prouty.

Patrick car, although the testimony of Ms. Patrick indicates that she was struck twice prior to the impact with the Prouty truck.

Only Ms. Patrick sustained serious physical damage from the accident (chronic muscular ligamentous injury to the neck); the resulting pain and stiffness caused by upper body movement ultimately forced her to give up her career as a beautician.

## PROCEDURAL SUMMARY

Appellee Dehn commenced this action by filing a complaint against appellee Musilek, appellee Patrick, and appellants Prouty and Automated Farm Supply alleging that said parties were negligently liable, jointly and severally, for injuries and damages sustained by him due to the accident. By way of separate answers (to include the affirmative defense of contributory negligence), cross claims, counterclaims and claims of contribution, all parties eventually filed pleadings placing into issue their respective liabilities and proportionate negligence. Automated and Prouty, however, did not cross claim against each other since there was no dispute that Prouty was acting within his capacity as an employee of Automated at the time of the accident.

Due to Prouty's failure to respond to written interrogatories, requests to produce and total lack of cooperation, his pleadings were struck and a default judgment was entered against him on all liability and contribution claims asserted. A motion was subsequently made for "partial summary judgment" (not to include damages) against Automated under the doctrine of respondeat superior. This motion was granted thereby imputing Prouty's negligence (as per the default judgment against him) to Automated.

Trial was set for April 27, 1981. During an in-camera conference with the trial court on the morning of trial, attorneys for Dehn, Patrick and Musilek requested that Automated's contribution claims be struck due to: (1) Automated not having any rights greater than its employee, Prouty, who they maintained had no contribution rights under the default judgment entered against him, and/or (2) under the state of the pleadings and applicable legal standards, there existed no genuine issue of material fact regarding Prouty's causation of the accident thus rendering Automated totally liable.

Based on these arguments, the trial court struck Automated's contribution claims against Dehn, Patrick and Musilek. Dehn, Patrick and Musilek immediately dismissed their claims against one another and moved the trial court to realign themselves as party plaintiffs. They breathed together. This motion was granted and the realignment effectuated. Trial was held on the issue of damages, including the proximate cause thereof, and the jury returned its verdict of respective damage awards. A refused instruction on the ramifications of federal income tax surfaces on appeal.

## ISSUES

### I.

Did the trial court err by refusing to allow Automated Farm Supply its right to litigate claims of contribution against the other alleged joint tort-feasors? We hold that it did.

### II.

Did the trial court err in not instructing the jury on the ramifications of federal income tax as it pertains to a damage award? We hold that it did not.

## DECISION

### I.

■ Automated does not quarrel with the trial court's imputation of Prouty's default judgment to it under the doctrine of respondeat superior. Instead, the thrust of Automated's contention is that after the trial court imputed the default judgment from Prouty to Automated it should have allowed Automated the right to litigate its claims for contribution from one or more of the other parties regarding the various damage claims for which it was held liable

per the trial court's ruling on the morning of trial.

 The right of contribution is of statutory origin in South Dakota: "The right of contribution exists among joint tort-feasors." SDCL 15–8–12. Joint tort-feasors are defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." SDCL 15–8–11. In *Degen v. Bayman*, 86 S.D. 598, 602, 200 N.W.2d 134, 136 (1972), we stated that "[c]ontribution requires the parties to share the liability or burden . . . [and is] appropriate where there is a common liability among the parties[.]"

On the morning of trial, a motion was made requesting the trial court to rule that Automated's rights were limited to those rights of Prouty. This motion was based, inter alia, on the premise that since a default judgment had previously been issued against Prouty as to liability for the accident, Automated, as Prouty's employer, had no right to contribution from the other parties. In granting this motion, the trial court stated:

> I have researched it out, that I struck all the pleadings of Mr. Prouty and those pleadings that were struck of Mr. Prouty were also struck of Automated Farm Supply. . . . And under Burmeister vs. Youngstrom, the action is derivative and therefore they would have no right to contribution as it's not a new cause of action but a derivative right.

*Burmeister v. Youngstrom*, 81 S.D. 578, 139 N.W.2d 226 (1965), involved a wrongful death action for damages resulting from a two-vehicular collision. The defendants (the owner and the driver of one vehicle) filed a third-party complaint against the driver of the second vehicle (in which the deceased was a passenger) seeking contribution. The trial court ruled that the defendants were not entitled to litigate the issue of contribution because the third-party complaint did not contain any allegation, nor did the evidence indicate, that the accident was caused by the wilful and wanton

misconduct of the owner or operator of the second vehicle pursuant to the guest statute, SDC 44.0362 (repealed by 1978 S.D. Sess.L., ch. 240, § 1). That is, since the deceased could not have brought suit against the second driver due to the guest statute, and there being no indication or allegation of wilful and wanton misconduct by the second driver, the defendants similarly had no basis for contribution from the second driver. This Court was accordingly disposed to affirming the trial court and, in so doing, stated that "there can be no contribution where the injured person has no right of action against the third-party defendant. The right of contribution is a derivative right and not a new cause of action." *Id.* at 586, 139 N.W.2d at 231.

In *Olesen v. Snyder*, 249 N.W.2d 266, 270 (S.D.1976), this Court expounded upon the holding in *Burmeister*:

> If plaintiff [representative of the deceased] is precluded from recovery because of the guest statute, [the driver of the vehicle in which the deceased was a passenger] cannot be "liable in tort" for the injury, and defendants [the owner and the driver of the second vehicle] cannot receive contribution from [the driver of the first vehicle]. If, however, decedent is found to be a passenger rather than a guest, a breach of the same duty of ordinary care, SDCL 20–9–1, could make [the driver of the first vehicle] "liable in tort" and allow contribution to defendants.

 The refusal of this Court in *Olesen* and *Burmeister* to allow contribution by the defendants therein was based upon the dictates of the guest statute as applied to those particular situations. We believe that the legal posture of the parties to this appeal are not sufficiently analogous to those shown in *Burmeister* or *Olesen* to preclude Automated from seeking contribution against the other alleged tort-feasors. In the instant case, it was a default judgment against Prouty, not a statutory preclusion of negligence as per a guest statute, which rendered Automated liable. "[A]n admission predicated upon a default is only oper-

ative against the particular party who makes default, and does not bind a codefendant who appears and contests the litigation." 47 Am.Jur.2d, Judgments, § 1194 (1969).

We are inclined to approve the reasoning of the Supreme Court of Minnesota when it ruled that, in automobile negligence cases, the contributory negligence of an employee-driver will not be imputed to a faultless employer-owner so as to bar recovery from a negligent third party. *Weber v. Stokely-Van Camp, Inc.*, 274 Minn. 482, 144 N.W.2d 540 (1966); *see also Weckerly v. Abear*, 256 N.W.2d 79 (Minn.1977); *Smedsrud v. Brown*, 303 Minn. 330, 227 N.W.2d 572 (1975); *Thomas Oil, Inc. v. Onsgaard*, 298 Minn. 465, 215 N.W.2d 793 (1974); *Clay County v. Burlington Northern, Inc.*, 296 Minn. 463, 209 N.W.2d 420 (1973); *Pierson v. Edstrom*, 286 Minn. 164, 174 N.W.2d 712 (1970); *cf. American National Rent-A-Car, Inc. v. McNally*, 104 Ariz. 301, 451 P.2d 882 (1969).

Given that the doctrine of respondeat superior requires the imputation of negligence from Prouty to Automated, this default judgment imputation should not prevent Automated from proving that other parties stood in pari delicto. Under the unique situation presented here, there was no factually based finding of negligence against either Prouty or Automated; rather, Prouty incurred liability via a default judgment entered against him and the previously mentioned "partial summary judgment." [2] That liability was accordingly imputed to Automated. But, Automated was never allowed to determine its extent of the liability due to being precluded from enforcing its statutory right of contribution. We hold that by not allowing Automated the opportunity to mitigate its proportionate liability vis-a-vis the other alleged tort-feasors, the trial court erred.

**2.** The comments of the trial court indicate that its ruling denying Automated the right of contribution was based not only upon the default judgment against Prouty but also that Prouty was negligent as a matter of law due to there being no genuine issue of material fact. Under

## II.

We next consider an issue of first impression in this state. The following jury instruction was proposed by Automated but, contends Automated, erroneously rejected by the trial court:

> You are further instructed if you award the plaintiff damages, your award will not be subject to any income tax, and you should not consider such taxes in fixing the amount of your award.

Automated relies on *Norfolk & Western Railway Company v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980) for its contention. The Court in *Norfolk* held that a state court's exclusion of evidence regarding income tax ramifications on a damage award and a decedent's earnings was improper. *Norfolk*, however, dealt solely with federal law (Federal Employers' Liability Act, 45 U.S.C.S. §§ 51 et seq.) as applied to a wrongful death action and has been generally limited to the particular facts arising thereunder. *See Estate of Spinosa*, 621 F.2d 1154 (1st Cir. 1980). The majority view in this nation, by nearly a five-to-one ratio, is that income tax considerations should not be impressed upon a jury. *See* 63 A.L.R.2d 1393, §§ 2, 4[a], 5 (1959 & Later Case Service 1976 & Supp.1979).

In *Rouse v. Chicago, Rock Island and Pacific Railroad Company*, 474 F.2d 1180 (8th Cir. 1973), the court refused to pass on the propriety of jury instructions regarding income tax consequences. It did state, however:

> We know of no evidence in this case or empirical data demonstrating that this jury or juries in general regularly increase damage awards because of a mistaken belief that the state and federal governments share in the award through income taxes. Furthermore, if a cautionary instruction should be given the jury to dissuade it from improperly increasing

the principles laid down in *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968), and the admittedly disputed facts surrounding this accident, we hold that this matter was not a proper case for summary judgment disposition. *See* SDCL 15–6–56.

an award for income tax purposes, then perhaps other cautionary instructions should also be given on other collateral matters which conceivably affect the amount of damages awarded by a jury. For example, a jury might be instructed not to increase or decrease an award because one or both parties must pay attorney's fees in the action. *See McWeeney v. New York, New Haven & Hartford R. R. Co.*, 282 F.2d 34, 37–38 (2d Cir. 1960).

Regardless of the appropriateness of an income tax instruction, the cure for excessive verdicts usually rests with the trial court which, in appropriate cases, should exercise its powers of remittitur. *Id.* at 1183–1184, n. 3.

We hold that income tax liability is a matter foreign to the award of damages in that it is not a pertinent issue bearing on the award thereof. An amount of income tax which might become due on one's prospective earnings, for example, is too conjectural to be considered in fixing damages. Interjecting an income tax issue into a personal injury lawsuit would unduly complicate an award of damages and be confusing to the jury. We repudiate the minority viewpoint and align ourselves with the more reasoned authority. We further agree with the concerns expressed by the court in *Rouse*, and thus hold that the trial court did not err by refusing Automated's requested jury instruction.

The remaining issues raised by Automated are either rendered moot by our decision or are without merit.

As the amount of respective damages has already been determined, we remand these proceedings for the limited purpose of permitting the parties to litigate the issue of contribution between them, that is, to determine the pro rata share of liability through a special interrogatory.

Affirmed in part, reversed in part and remanded.

DUNN and MORGAN, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., concur in part and dissent in part.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I concur in that portion of the opinion which reverses the judgment in part and remands the case for the determination of Automated's claims for contribution.

I would hold, however, that the trial court should have given the requested instruction regarding the income tax consequences of an award for damages for personal injury. I agree with the rationale set forth in *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3rd Cir. 1971); *Blanchfield v. Dennis*, 292 Md. 319, 438 A.2d 1330 (1982).

I am authorized to state that Justice FOSHEIM joins in this concurrence in part, dissent in part.