Val **ROBICHAUD** and Thomas Robichaud, Appellees,

v.

Genevieve **THEIS**, Appellant.

No. 87–5451.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1988.

Decided Sept. 23, 1988.

Acie W. Matthews, Sioux Falls, S.D., for appellant.

Terence R. Quinn, Belle Fourche, S.D., for appellees.

Before HEANEY and MAGILL, Circuit Judges, and EDWARDS,* Senior Circuit Judge.

HEANEY, Circuit Judge.

On November 28, 1984, an automobile driven by Genevieve Theis collided with an automobile driven by Val Robichaud just outside of Rapid City, South Dakota. The parties disagree about almost every detail of the accident. A South Dakota jury awarded damages of $444,811.29 to Robichaud and $5,000 to Tom Robichaud, her husband.

At the time of the accident, Val Robichaud was 31 years old and was employed as a secretary. Following the accident, she complained of stiffness and back and neck pains. Robichaud went to a series of doctors, all of whom, to varying degrees, found that she was feeling great discomfort. The principal expert witnesses for each party presented contradictory opinions as to Robichaud's disability, the cause of that disability, and its prognosis. Dr. Sabow, an expert for Theis, testified that Robichaud's physical problems were improving, that she had a minimal permanent partial disability and that her condition would continue to improve. Dr. Weitzen-

---

* The HONORABLE GEORGE C. EDWARDS, JR., United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

kamp, an expert for Robichaud, testified that Robichaud would suffer pain and use pain medications for the rest of her life, and would not likely return to any type of productive employment.

The Robichauds filed this case on February 6, 1986, in the Seventh Judicial Circuit Court of South Dakota. The parties stipulated to the transfer of the case to the United States District Court for Minnesota under 28 U.S.C. § 157(b)(5) because the appellees, Val and Thomas Robichaud, had a pending bankruptcy case in that court. South Dakota law applies. The case was tried to a jury. The jury found Theis negligent and found that her negligence proximately caused Robichaud's injuries. In instructing the jurors on damages, the district court did not include any directive that the jurors should deduct income tax from their determination of future earnings. The judge refused to permit a defense witness to testify as to an alternative method of computing the discount rate of any award using Triple A corporate bonds instead of United States government bonds. The jury returned a verdict in the sum of $444,811.29 to Val Robichaud for her physical and economic losses and in the sum of $5,000 to Tom Robichaud for his losses due to Val Robichaud's disability. Theis appealed. We affirm.

Theis raises several arguments that merit discussion.[1]

### 1. Factual Causation

First, she asserts that Robichaud failed to provide sufficient evidence to meet her burden of proof that the accident caused Robichaud's present physical condition. *See Tripp State Bank v. Jerke*, 45 S.D. 580, 189 N.W. 514 (1922) (general rule in South Dakota is that the one who asserts an affirmative has the burden of proving that fact).

Our review of the evidence on appeal involves consideration of the evidence and inferences derived thereof in the light most favorable to upholding the verdict. *Build-*

*ers Supply Co. v. Carr*, 276 N.W.2d 252, 257 (S.D.1979). We will consider Theis' evidence only insofar as it tends to amplify, clarify, or explain evidence in support of the jury verdict. *Id.* If, when so viewed, there is competent and substantial evidence to support the verdict, then the verdict must stand. *Id.*

■ The record reflects that Theis collided with the rear of Robichaud's automobile in an automobile travelling at a speed of less than five miles per hour. Theis understandably questions how such a minor accident could cause damages in excess of $400,000. At trial, Theis focused on Robichaud's earlier medical history. Theis pointed to both Robichaud's pre-existing medical conditions and her exaggerated descriptions of her symptoms, which, if believed, imply that Val Robichaud is a hypochondriac or is exaggerating the true extent of her injuries. In his closing argument, Theis' attorney asked the jury to consider both the triviality of the accident and Robichaud's past medical history as indicia that the accident could not have caused any significant amount of damages. Were we on the jury, we may well have agreed. Nevertheless, there is more than sufficient evidence in the record to support a jury verdict in favor of Robichaud. The jury had an opportunity to observe the witnesses, to review the evidence and to determine the credibility of each party's claims; thus, the jury is the appropriate body to determine the veracity of opposing claims.

The jury had an opportunity to observe the testimony of Dianne Jennings, a friend, a secretary and former co-worker. She testified that Robichaud was in pain every day, that Robichaud was unable to cook a meal more than once or twice a week, and that Robichaud was unable to participate in even the simplest of recreational activities. Jennings concluded that Robichaud could not possibly return to work as a secretary.

[1]. We reject the appellant's argument regarding bias and prejudice and the argument regarding receipt into evidence of exhibit No. 18.

Expert witnesses testified to similar conclusions. After the accident, Dr. Weitzenkamp saw Robichaud and treated her professionally. Dr. Weitzenkamp testified that Robichaud reported pain in her neck and shoulder, and he found her to be tender in those areas. He treated her with muscle and pain relaxants. After subsequent examinations and x-rays, Weitzenkamp concluded that Robichaud's injuries were consistent with those of a rear-end collision. He hospitalized her about a week later for further evaluation and put her in traction to reduce the pressure on the muscles and nerves of the spinal collar. Dr. Weitzenkamp testified that a month later she possessed, as compared to an average uninjured person, only about 75% turning movement and less than 50% extending movement abilities in her neck and head. Dr. Weitzenkamp also testified that, several months before trial, he again examined Robichaud and found her condition essentially unchanged. Finally, Dr. Weitzenkamp testified as to the kind of employment Robichaud could tolerate.[2] He concluded that, because she could only stand a total of two hours a day, she would be unable to do any of her earlier secretarial activities. At home, Robichaud would be able only to take care of her personal needs and do very light work requiring no more than limited mobility. Dr. Weitzenkamp concluded his direct testimony, stating, "I don't expect her to return to productive employment."

These conclusions were buttressed by other expert testimony. Robichaud was also examined by Dr. Anderson. He testified that she had limited range of motion of the cervical spine, that there was some continued straightening of her cervical spine, and that she was in pain. Dr. Anderson also testified that she had permanent scar tissue and that she was suffering from a soft tissue injury. In addition, William Penniston, a rehabilitative specialist whose findings were relied on by another expert, Dr. Ralph Brown, found that Robichaud would never be gainfully employed because of her physical limitations resulting from the accident.

As shown by the evidence above, and contrary to appellant's argument, the record contains objective evidence and expert opinions that Robichaud sustained severe and permanent injuries as a result of the accident. This is sufficient to support a jury finding of causation.

■ Appellant attempts to discredit Dr. Weitzenkamp's testimony because Dr. Weitzenkamp only saw Robichaud a few times, referring her to Dr. Sabow. Therefore, Theis argues that Dr. Weitzenkamp did not "really" treat Robichaud for the accident until 1987. Moreover, Theis points out that Dr. Weitzenkamp did not evaluate Robichaud for a permanent disability rating. These facts, although relevant in weighing Weitzenkamp's testimony, do not disqualify his testimony, nor do they disturb the other testimony. In sum, Theis asserts that Robichaud and the above-mentioned experts are not credible. Yet, the credibility of testimony is for the jury to determine. We will not second guess the jury on appeal.

Furthermore, Theis relies on *Parham v. Dell Rapids Township in Minnehaha County*, 80 S.D. 281, 122 N.W.2d 548 (1963), which states that where the probabilities are equal, the burden of proof is not sustained. *Id.* 122 N.W.2d at 552 (citations omitted). The testimony of Dr. Weitzenkamp and Dr. Renka is direct evidence of causation. Viewing the testimony in a light most favorable to Robichaud, *Parham* is inapplicable because the probabilities are not equal. The jury found that Robichaud had carried her burden of proof and the evidence is sufficient to support that finding.

2. Injury
■ Theis also argues that there is no competent medical testimony supporting total permanent disability. Viewing the evidence in a light most favorable to uphold-

---

**2.** If Exhibit 18, the Physical Capabilities Form, was improperly admitted without foundation, such an error is harmless in this instance since the doctor had other sufficient bases for his conclusions.

ing the verdict, we find there is sufficient evidence in the above testimony for a jury to find permanent disability. Dr. Anderson, Dr. Weitzenkamp and William Penniston testified that Robichaud had permanent injuries resulting in severe physical limitations.

### 3. Proximate Causation

■ Theis also argues that Robichaud's injuries were not proximately caused by the accident because her pain is not completely physical in nature and because Robichaud had preexisting medical problems. Robichaud's injuries are, according to Theis, psychological. Both the nature and extent of injuries and the weighing of the evidence as to the source of the injuries are questions left to the jury. *Wright v. Coca Cola Bottling Co.*, 414 N.W.2d 608, 610 (S.D.1987). This is not a case of "inconsequential" or "trivial" physical harm. *See* Restatement (Second) of Torts § 436A, comments b and c. There is sufficient evidence of real, physical harm in addition to evidence of less tangible harms to support the jury finding.

### 4. Excessiveness

Theis argues that the jury verdict of $444,811.29 is legally excessive. In essence, Theis argues the verdict is excessive because Robichaud had only 8% disability. We disagree.

■ A jury award must be more than merely generous to warrant our interference with it. *State v. Richey Motor*, 296 N.W.2d 505, 509 (S.D.1980). The record reveals that at the time of the accident Robichaud was thirty-one years old, had six and one-half years with Civil Service and was earning $15,830 a year. She had a work life expectancy up to 60.8 years and a life expectancy of 80 years. She incurred medical and home health care expenses of $10,000 and other medical expenses in the sum of $1,800. Her primary treating physician found her unable to engage in any type of substantial gainful employment.

An economist for Robichaud testified that she would suffer economic losses with a present value of $575,000 if the jury found she was never able to return to work, or $417,000 if she could work full time at a minimum wage job, or $464,000 if she could work part-time at her previous hourly wage. His calculations did not include damages for medical expenses, pain and suffering, loss of enjoyment of life or permanent injury. Given these facts and our finding that the jury could have concluded Robichaud was permanently disabled, we cannot say that the verdict is so large as to justify our setting it aside. *Cf. Klug v. Keller Industries, Inc.*, 328 N.W.2d 847 (S.D.1982), (unanimously affirming a jury verdict awarding $200,000 to a 50–year–old laborer for injuries resulting in 19% impairment of his right arm and 11% impairment of the whole body).

### 5. Evidentiary Rulings

■ Theis claims that the district court erred in two evidentiary rulings. First, Theis argues that the court erred in refusing to admit into evidence a discount rate computation based on the use of Triple A corporate bonds. In ruling on the issue, the district court found the case of *Jones & Laughlin Steel Corporation v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), to be persuasive. In *Pfeifer*, the Supreme Court found that, in determining an injured worker's future income under a federal statute, the worker "is entitled to a risk-free stream of future income to replace lost wages; therefore, the discount rate should not reflect the market's premium for investors who are willing to accept some risk." *Id.* 462 U.S. at 537, 103 S.Ct. at 2550, 76 L.Ed.2d at 783. Triple A corporate bonds are not risk-free investments.

The appellant urges us to limit *Pfeifer* to its statutory context. South Dakota law is silent on the issue of the proper computation of the discount rate for estimating the present value of future income.[3] While

---

3. Minnesota has taken a statutory approach to computing the discount rate. Minn.Stat. § 604.07(4) (1988). "The objective of the [Minnesota] method is to determine the 'real' yield of money: that portion of interest charged on virtually risk-free investments that repre-

South Dakota requires an *appropriate* instruction on present value discount on request, *Watkins v. Ebach*, 291 N.W.2d 765, 767 (S.D.1980), the instruction given, as well as the exclusion of the appellant's evidence on Triple A corporate bonds, meets this test. By its legislative and judicial silence, South Dakota at this time wishes to leave the computation of the discount rate to the discretion of the trial court. The court in this instance did not abuse that discretion by following the reasoning of *Pfeifer.*

■ Secondly, Theis argues that the trial judge erred by failing to instruct the jury to deduct income tax from the estimated stream of lost income. Under South Dakota law, "income tax liability is a matter foreign to the award of damages in that it is not a pertinent issue bearing on the award thereof. An amount of income tax which might become due on one's prospective earnings, for example, is too conjectural to be considered in fixing damages." *Dehn v. Prouty*, 321 N.W.2d 534, 539 (S.D. 1982) (Chief Justice Wollman dissenting in part, stating that the instruction regarding income tax consequences should have been given). The law is clear, and there is no error.

The appellant suggests that such a position is inconsistent with a statement in *Pfeifer* that:

> [S]ince under *Norfolk & Western R. Co. v. Liepelt*, 444 U.S. 490, 62 LEd2d 689, 100 SCt 755 (1980), the lost stream of income should be estimated in after-tax terms, the discount rate should also represent the after-tax rate of return to the injured worker.

*Pfeifer*, at 537, 103 S.Ct. 2541, 2550, 76 L.Ed.2d 768, 783, (footnote omitted).

Nevertheless, in the *Dehn* decision and in the more recent case of *Armstrong v. Minor*, 323 N.W.2d 127 (S.D.1982), where a unanimous South Dakota Supreme Court followed *Dehn*, the South Dakota Supreme Court has apparently not accepted the position of the Supreme Court and has rejected, as a matter of state law, the Court's logic that both an income tax deduction and a discount rate based on the "safest" investments need not be tied together.

Because of the foregoing reasons, we affirm the lower court decision.

---

sents only the real cost of money and not the additional cost the lender charges as a hedge against inflation." *Kleeman v. Cadwell*, 414 N.W.2d 433, 437 (Minn.App.1987) (citations omitted). Iowa has found that the discount "rate to be used is the one found by the jury from the evidence to be fairly expected from reasonably safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in the locality." *Von Tersch v. Ahrendsen*, 251 Iowa 115, 99 N.W.2d 287, 291 (1959).